**UNITED STATES of America**

v.

**Joseph E. MORIN.**

**Crim. No. 11588.**

United States District Court
D. Connecticut,
at Hartford.

Jan. 19, 1966.

Jon O. Newman, U.S. Atty., Hartford, Conn., for plaintiff.

John P. McKeon, Hartford, Conn., for defendant.

BLUMENFELD, District Judge.

The defendant in this case moves under Rule 41(e) to suppress certain evidence seized in the course of executing a search warrant or taken from the defendant at the time of his arrest. Rule 41(b) (2) provides that "a warrant may be issued under this rule to search for and seize any property * * * (2) Designed or intended for use or which is or has been used as the means of committing a criminal offense."

The search warrant was issued for the search of premises known as the second floor, rear of 20 Franklin Street, New Britain, Connecticut, a three-story woodframe building. At the hearing, no claim was made nor evidence offered that anything more was presented to the Commissioner than a fourteen paragraph affidavit of Grillo, a Special Agent, Intelligence Division, Internal Revenue Service. In it, he states that he has reason to believe that there was concealed on those premises "certain records, papers, writings, slips, radios, marking and writing materials, racing forms, cash moneys, machines and equipment, all of which are being used in violation of Title 26, United States Code, Sections 4401, 4411, 4412, 7203 and 7262."

■ However, the finding of probable cause must be made by a "neutral and detached magistrate," Johnson v. United States, 333 U.S. 10, 13–14, 68 S.Ct. 367, 92 L.Ed. 436 (1948), and "the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the [materials specified] were where he claimed they were * * *." Aguilar v. Texas, 378 U.S. 108, 114, 84 S.Ct. 1509, 1514, 12 L.Ed.2d 723 (1964). As support for that belief, the affiant sets out some observations of his own as well as those of several state police officers. Although not fellow officers of the Intelligence Division, those state policemen, participating in a common investigation, would be regarded as reliable informants. See United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965).

■ Before turning to what they observed, it is advisable to separately consider the information received from an unidentified "reliable informant" as related in the first paragraph of the affidavit:

"1. On August 9, 1965, I received information from a reliable source, who had furnished reliable information in the past, that a man, who answers to the name of 'Jim', was accepting horse race and sports bets over Telephone Number BA 9–4554, and that this was the office of Andrew Mascola, a known bookmaker and alleged head of the bookmaking syndicate in New Britain, Connecticut, and that Telephone Number BA 9–4554 was a number called by bettors to place bets."

Analytically, there is no way of determining whether the "information" in that paragraph is based on the informant's own observations, hearsay from another or third-hand rumor. Although the standards of proof permitted to support a finding of probable cause are not stringent, they are not dispensed with entirely. Since the degree of proof necessary to satisfy a Commissioner that there is probable cause for the issuance

of a warrant is less than what is required to prove guilt at a criminal trial, Carroll v. United States, 267 U.S. 132, 161, 45 S.Ct. 280, 69 L.Ed. 543 (1925); Dumbra v. United States, 268 U.S. 435, 441, 45 S.Ct. 546, 69 L.Ed. 1032 (1925), there is less insistence on the most reliable source of information. And merely because the information is hearsay from an unidentified informant does not require the Commissioner to disregard it. If the informant is reliable, that would furnish a sufficient basis for crediting his testimony. Jones v. United States, 362 U.S. 257, 269–272, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). Prior to *Jones*, the Supreme Court had upheld a Commissioner's determination of probable cause based upon "facts and circumstances within [the police officers'] knowledge, and of which they had reasonably trustworthy information, * * * sufficient in themselves to warrant a man of reasonable caution in the belief" that a crime had been or was being committed. Carroll v. United States, supra, 267 U.S. at 162, 45 S.Ct at 288. Evidence to establish probable cause need not be of the quality admissible at a trial, e. g., prior arrests or indictments of the accused. See Brinegar v. United States, 338 U.S. 160, 173, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). And Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), holds that reasonably corroborated hearsay testimony may be considered in assessing whether there is probable cause for an arrest without a warrant. However, the relaxation of criminal trial standards concerning *the form* in which testimony may be presented does not extend to the subject matter of the testimony. The rule permitting reasonably substantiated hearsay testimony, Jones v. United States, supra, 362 U.S. at 257, 80 S.Ct. 725, to be weighed by a magistrate as having probative value has been confined to factual information. Thus, in Nathanson v. United States, 290 U.S. 41, 44, 54 S.Ct. 11, 78 L.Ed. 159 (1933), where the affiant stated that "he has cause to suspect and does believe" that the liquors

on which federal taxes were unpaid were "within the premises of J. J. Nathanson," the Supreme Court expressly held that this was insufficient to support a finding of probable cause:

> "Under the Fourth Amendment, an officer may not properly issue a warrant to search a private dwelling unless he can find probable cause therefor from *facts or circumstances* presented to him under oath or affirmation. Mere affirmance of belief or suspicion is not enough." (290 U.S. at 47, 54 S.Ct. at 13) (Emphasis added.)

See also Giordenello v. United States, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958). These cases exemplify the application of the historical rule that "under the exceptions to the Hearsay rule the testimony of the witness deceased or absent must equally be based on personal observation. The testimony is admitted in spite of its not having been given on the stand subject to the test of cross-examination; but still it is testimony, and the person making the statements must have the means of knowledge expected normally of every witness," Wigmore, Vol. II, p. 791, § 670, "and must have actually observed the fact[s]." McCormick on Evidence, § 10, p. 19.

In teaching that Commissioners must adhere to the historical rule, Mr. Justice Goldberg, in the case of Aguilar v. Texas, supra, made forceful use of pointed quotations from earlier opinions where the Supreme Court had applied the rule that search warrants based on second-hand hearsay are not valid, 378 U.S. at 113–114, 84 S.Ct. at 1513 and n. 4:

> "The vice in the present affidavit is at least as great as in Nathanson and Giordenello. Here the 'mere conclusion' that petitioner possessed narcotics was not even that of the affiant himself; it was that of an unidentified informant. The affidavit here not only 'contains no affirmative allegation that the affiant spoke with personal knowledge of the matters contained therein,' it does not even contain an 'affirma-

tive allegation' that the affiant's unidentified source 'spoke with personal knowledge.' For all that appears, the source here merely suspected, believed or concluded that there were narcotics in petitioner's possession.[4] The magistrate here

> "4. To approve this affidavit would open the door to easy circumvention of the rule announced in Nathanson and Giordenello. A police officer who arrived at the 'suspicion,' 'belief' or 'mere conclusion' that narcotics were in someone's possession could not obtain a warrant. But he could convey this conclusion to another police officer, who could then secure the warrant by swearing that he had 'received reliable information from a credible person' that the narcotics were in someone's possession.

certainly could not 'judge for himself the persuasiveness of the facts relied on * * * to show probable cause.' He necessarily accepted 'without question' the informant's 'suspicion,' 'belief' or 'mere conclusion.' "

That the inner quotations in the above passage have significance conceptually to bar hearsay on hearsay is implicit in United States v. Ventresca, supra, 380 U.S. 102, 85 S.Ct. 741. In rejecting the reading by the Court of Appeals in *Ventresca* that the warrant was invalid because of "the distinct possibility of hearsay-upon-hearsay," the Supreme Court explained at 110, 85 S.Ct. at 747:

> "Its determination that the affidavit might have been based wholly upon hearsay cannot be supported in light of the fact that Mazaka, a Government Investigator, swore under oath that the relevant information was in part based 'upon observations made by me' and 'upon personal knowledge' as well as upon 'information which has been obtained from Investigators of the Alcohol and Tobacco Tax Division, Internal Revenue Service, who have been assigned to this investigation.' It also seems to us that the assumption of the Court of Appeals that all of the information in Mazaka's affidavit may in fact have come from unre-

liable anonymous informers, passed on to Government Investigators, who in turn related this information to Mazaka is without foundation. Mazaka swore that, insofar as the affidavit was not based upon his own observations, it was 'based upon information received officially from other Investigators attached to the Alcohol and Tobacco Tax Division assigned to this investigation, and reports orally made to me describing the results of their *observations* and investigation.' "[1] (Emphasis by Supreme Court) But in deciding that the Court of Appeals was wrong about this point, there was certainly tacit agreement with the fundament that probable cause for a search warrant cannot be based on information which is "hearsay on hearsay or some other form of multiple hearsay." See *Ventresca*, Douglas, J., dissenting. The Justices were not divided on that.

Obviously, the fatal omission in the testimony of the reliable informer that he "spoke with personal knowledge" in this case cannot be cured by the affiant's statement that as a result of that information he has "reason to now believe that on the premises" there are materials used in violation of specified sections of Title 26.

█ On the other hand, this limitation upon the effectiveness of hearsay once-removed does not demand that an affidavit of a complainant seeking a warrant shall be entirely invalidated by the inclusion of some "hearsay on hearsay" or unsupported hearsay *opinion*. Even if, as the governments suggests, *Ventresca* may be read as holding that some "hearsay on hearsay" in an affidavit does not permeate those parts which are demonstrably not in the same way deficient in probative value for the purpose of determining "probable cause," it does not follow that unreliable "hearsay on hearsay" testimony may, nonetheless, be given "some weight" as the government contends. If the unsupported hearsay does not taint the remaining parts of the affidavit, neither does it strengthen it. The distinction is one of kind rather than of degree. The first paragraph of the affidavit is simply surplusage which must be disregarded.

The remainder of the affidavit may be briefly summarized. There was a telephone listed to Joseph Morin at 235 West Main Street, New Britain, Connecticut. A short, white male (John Doe) was observed on June 21, 1965, to enter the rear basement door of 235 West Main Street at 11:35 a. m. and remain there until after 3:45 p. m. On June 24, 1965, he entered the same place at 11:31 a. m. and remained until 8:15 p. m., when he went to the Liberty Variety Store owned by Andrew Mascola for 5 or 10 minutes and then returned. On July 20, 26 & 30, 1965, he left 235 West Main Street and bought an Armstrong Daily at the Old Nutmeg Tobacco Shop, 141 Main Street, between 10:30 a. m. and 11:45 a. m. On August 8, 15 & 22, 1965, he was observed talking to Andrew Mascola at the Liberty Variety Store. Mascola was operating a 1957 Cadillac registered to him at East Haven, Connecticut, on September 13, 1965. On September 25th, John Doe left the Liberty Variety Store at 10:30 a. m. and drove off in a 1965 Thunderbird registered to Andrew Mascola's wife, Margaret, at Kensington, Connecticut.

The scene of John Doe's activity now changes. At 11:10 a. m. on September 29, 1965, he bought a Daily Armstrong at the Old Nutmeg Tobacco Shop and walked directly to 20 Franklin Street, New Britain, and entered by the west side second door. At approximately the

---

1. By way of reverse analogy, the issuance of a warrant was upheld in United States v. McCormick, 309 F.2d 367 (7th Cir. 1962), cert. denied, 372 U.S. 911, 83 S. Ct. 724, 9 L.Ed.2d 719 (1963), when it appeared that the information was received by an informer who was "present" and "observed" the events he described. And see, e. g., Giacona v. United States, 257 F.2d 450 (5th Cir.), cert. denied, 358 U.S. 873, 79 S.Ct. 113, 3 L.Ed.2d 104 (1958).

512

same time on November 1, 2, 15 & 16, 1965, he followed the same procedure.

The Daily Armstrong, which has a listing of horses racing at various tracks is published daily and publicly sold. It is used by bookmakers accepting horse race bets, usually during the hours between 11:00 a. m. and 4:00 p. m. Bookmakers usually record such bets in writing.

No Wagering Occupational Tax Stamp was issued during 1965 to any of the aforementioned persons. This is the situation as presented to the Commissioner.

■ It cannot logically be concluded that "the apparent facts set out in the affidavit are such that a reasonably discreet and prudent man would be led to believe that there was a commission of the offense," see Dumbra v. United States, supra, 268 U.S. at 441, 45 S.Ct. at 549, by anyone at the second floor, rear of 20 Franklin Street, of being "engaged in the business of accepting wagers," 26 U.S.C. § 4401(c), to support the imposition of the special tax under § 4411; or to require registration under § 4412; or that anyone in those premises willfully failed to pay such tax under § 7203 or under § 7262. No one other than John Doe was ever seen to enter those premises, let alone make a wager of any kind there. No one ever saw him accept a wager anywhere. In fact, it does not even appear that there was a telephone line over which a wager on credit might have been made. United States v. Conway, 217 F.Supp. 853 (D. Mass.1962). There is no factual basis for a finding of probable cause that anyone was accepting or receiving wagers at the described premises. United States v. Dubin, 217 F.Supp. 206 (D.Mass.1963); People v. Fino, 14 N.Y.2d 160, 250 N.Y.S. 2d 47, 199 N.E.2d 151 (1964).

No matter how experienced and knowledgeable the affiant was with respect to wagering activities, there were not sufficient facts laid before the Commissioner to support the issuance of the search warrant under which the evidence sought to be suppressed was seized.

The motion to suppress is granted.