Loren (Red) BROOKS, Rita Moore and Gale Kenneth Nipp, Appellants,

v.

UNITED STATES of America, Appellee.

No. 25380.

United States Court of Appeals Fifth Circuit.

Sept. 22, 1969.

W. S. Moore, Jackson, Miss., Roy O. Parker, Tupelo, Miss., for appellants.

H. M. Ray, U. S. Atty., Oxford, Miss., J. Murray Akers, Asst. U. S. Atty., Oxford, Miss., for appellee.

Before AINSWORTH and SIMPSON, Circuit Judges, and SINGLETON, District Judge.

SIMPSON, Circuit Judge:

Appellants Gale Kenneth Nipp (Nipp) and Rita Moore (Moore) were found guilty of violation of Title 18, U.S.C. Section 2113(a) (second paragraph) and

Section 2, for burglarizing the Shannon, Mississippi, branch of the Peoples Bank and Trust Company of Tupelo, Mississippi, a Federal Deposit Insurance Corporation insured bank, and along with Loren "Red" Brooks (Brooks) they were found guilty of conspiring, in violation of Title 18, U.S.C. Section 371, to commit offenses against the United States in respect to crimes against federally insured banks. All three appeal from judgments of conviction and sentences imposed as a result of these jury verdicts. We reverse as to Brooks and affirm as to Nipp and Moore.

Nipp and Moore rented and occupied the W. A. Shaw cabin in the Pickwick lake area near the Tennessee line in Tishomingo County, Northern District of Mississippi, on May 28, 1967. Nipp used an alias and Moore posed as his wife. They were visited by appellant Brooks and by another alleged co-conspirator, Donald Edwin Moore, who was indicted with appellants but who was at large at the time of the trial below. The Shannon Office of the Peoples Bank, located in the Northern District of Mississippi, was burglarized on May 29, 1967, and on June 14, Donald Moore was arrested in Louisville, Kentucky, in possession of Series "E" Savings Bonds stolen during that burglary. On June 20, the Branch Bank of the Holmes County Bank and Trust Company in West, Mississippi, was burglarized in a manner similar to the Shannon burglary. Safety deposit boxes, their contents, and the container holding the boxes were stolen. In late June and early July, various articles taken from the West Branch Bank were found in the same area as the Shaw cabin which Nipp rented and occupied with Moore.

Ralph D. Gardner, a Special Agent of the Federal Bureau of Investigation, on July 5, 1967, executed a search warrant affidavit, and stated in the affidavit that he had reason to believe that the Shaw cabin was being used to conceal stolen property and burglary tools and that from his personal knowledge he had reason to believe that the instruments and tools listed in the affidavit had been used in the two bank burglaries mentioned above. As facts tending to establish the grounds for the issuance of the search warrant, Gardner set forth the following:

"That the following information was furnished me by the signed and sworn affidavit of Sheriff James Bishop, who is known to me as the Sheriff of Tishomingo County, Mississippi: That on June 26, 1967, an informant of Sheriff Bishop of long standing reliability, had occasion to be on the above described premises at the invitation of the occupants, and that while in said cabin located on said premises he observed the following items to-wit: Oxygen and acetylene tanks, hoses designed for use with oxygen-acetylene equipment, a cutting torch, numerous tools suitable for use in burglaries, and that said items were partially concealed in one of the back rooms of said cabin. Said informant further identified from a group of photographs, photographs of Rita May Williams, alias Rita Moore and Donald Edwin Moore as two of the individuals present in said cabin. The said informant furnished other relevant and pertinent information to establish grounds for this search and seizure in the above referred to affidavit furnished by Sheriff James Bishop and the affidavit is attached hereto and is incorporated and made a part of this affidavit."

Sheriff Bishop's affidavit, which was filed with the affidavit of Agent Gardner, described his informant as a person of good moral character and excellent community reputation for truth and veracity, and as one who had furnished reliable information on numerous past occasions and who had never given the sheriff any false information. The information set forth was essentially the same as that contained in Agent Gardner's affidavit, but was much more detailed and specific. The suspicious movements over a period of several weeks of persons and vehicles to and away from the Shaw cabin and its adjacent lot were

related in detail including the absence of the three men described as frequenting the cabin from about 11 P.M. until 5 A.M. the night of the West Branch bank robbery, June 20–21. One of these three men was identified as burning a large pile of papers and other items in the area immediately behind the cabin during the afternoon of June 21. The informant later examined the trash pile where the burning occurred and found charred remains of clothing and business-type papers, a pair of burned cutting pliers, and charred remnants of hose equipment such as is used with oxygen-acetylene equipment. (Evidence at the scenes of the two burglaries indicated that acetylene torches had been used to effect entry.) Also incorporated and filed with Agent Gardner's affidavit were affidavits of a private citizen who stated that he had placed his daughter's social security card in his safety deposit box at the West Branch of the Holmes County Bank and Trust Company in West, Mississippi, and that neither he nor his daughter had been to the Pickwick dam area since she obtained her social security card, and the affidavit of another private citizen stating that he had found the social security card on June 24 in a recreation area on Pickwick Lake. The United States Commissioner on July 5 issued a warrant for the search of the premises known as the lot and cabin of Andy Shaw, finding probable cause on the basis of the affidavits, Donald Moore's arrest in possession of the Series "E" Bonds, and Nipp's reputation (verified by Agent Gardner) as a known safe burglar in the south and southwest. Official FBI records were identified by the Gardner affidavit as the source of the last two statements.

Agents of the Federal Bureau of Investigation had the Shaw cabin under surveillance, and on July 12, when Nipp and Moore came to the cabin, these agents served the search warrant and conducted a search of the cabin and of the automobile in which Nipp and Moore had arrived. The search turned up a large number of items of a highly in-criminating nature, and Nipp and Moore, who were then placed under arrest, made incriminating statements to the arresting officers.

An indictment was filed on July 19, 1967, charging the three appellants, along with Donald Edwin Moore and Billy Shoemake, with conspiring, and charging Donald Edwin Moore, Rita Moore, and Gale Kenneth Nipp with the substantive offense of burglary of the Shannon bank. Brooks and Shoemake were arrested in Little Rock, Arkansas, on July 19. On September 19 the indictment was dismissed as to Shoemake. The trial proceeded against these three appellants, beginning on September 25, 1967, and the jury returned a verdict finding Brooks, Rita Moore, and Nipp guilty as charged in the indictment. On October 18, 1967, the appellants were sentenced to the following terms of imprisonment: Brooks, five years; Moore, two consecutive three-year terms; and Nipp, consecutive terms of five years and fifteen years.

I.

On September 25, the date the case was set for trial, appellants Nipp and Moore filed a motion to quash the indictment and the petit jury venire on the ground that the jury selection system used in the Northern District of Mississippi failed to produce an acceptable number of females for jury service in that district. The trial judge did not abuse his discretion in concluding that the motion came too late. Appellants were represented by counsel at their arraignment on August 3, 1967, and on their behalf he waived the reading of the indictment and entered pleas of not guilty. Counsel was told by the court that "in the event any of the defendants have any motions, I would like those filed within 15 days". The attorney who represented appellants at that time subsequently withdrew from the case, stating at the time that the court had specifically ruled that all motions must be filed within 15 days. On the day the trial was to begin, when this motion attacking the

jury venire was presented, the trial court, after hearing counsel, said that from counsel's statement, from the length of time the indictment had been pending and the length of time from the arraignment, the court felt that the motion was filed primarily to obtain a continuance. Holding the motion was not timely filed, the court declined to consider it and overruled it.[1] Under these circumstances the decision of the trial court was clearly not an abuse of discretion, and his ruling denying the motion was not error.

## II.

■ We do not deem it necessary to consider any of the numerous procedural questions raised by appellant Brooks, because the evidence against him is so slight that his conviction can not stand. The sufficiency of the evidence is questioned by all three appellants. As to Nipp and Rita Moore, however, the evidence obtained as a result of the search of the car and cabin and their statements to F.B.I. agents is more than sufficient to support the jury's finding as to their guilt. Matters stand differently as to Brooks. The only charge against Brooks was that of conspiracy, and the record is devoid of evidence as to his having entered into or even having known of any criminal scheme. There

is some evidence in the form of a palm print and in identification by a witness, the caretaker of the Shaw cabin, to put Brooks at the cabin during the time it was occupied by Nipp and Moore. On this appeal the government relies principally upon attacking the credibility of the alibi witnesses who testified on behalf of Brooks. We are not referred to any evidence whatsoever which shows that Brooks knew of the existence of any criminal enterprise. Other than the fact that he visited a cabin that was occupied by the other two parties whose guilt was sufficiently established, no circumstances are shown from which knowledge may be inferred. This is not enough. To permit the conviction of Brooks to stand on the meager evidence in this record would be to countenance a finding of guilt by association. These conclusions are reached after careful review of the evidence in the light most favorable to the government. Glasser v. United States, 1942, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680; Peters v. United States, 5 Cir. 1967, 376 F.2d 839. On remand the district court is directed to dismiss the indictment as to Brooks.

## III.

■■ Appellants Nipp and Moore primarily contend that their conviction was

---

1. See Rule 12(b) (2) and 12(b) (3), Federal Rules of Criminal Procedure.

"RULE 12. PLEADINGS AND MOTIONS BEFORE TRIAL; DEFENSES AND OBJECTIONS.

(a) Pleadings and Motions. * * *

(b) The Motion Raising Defenses and Objections.

\*　　\*　　\*　　\*　　\*

(2) Defenses and Objections which Must Be Raised. Defenses and objections based on defects in the institution of the prosecution or in indictment or information other than that it fails to show jurisdiction in the court or to charge an offense may be raised only by motion before trial. The motion shall include all such defenses and objections then available to the defendant. *Failure to present any such defense or objection as herein provided constitutes a waiver thereof, but the court for cause shown may grant relief from the waiver.*

Lack of jurisdiction or the failure of the indictment or information to charge an offense shall be noticed by the court at any time during the pendency of the proceeding.

(3) Time of Making Motion. The motion shall be made *before* the plea is entered, but the court *may* permit it to be made within a reasonable time thereafter." (Emphasis added.)

The rule requires timely objection to method of jury selection. Absence of prejudice is properly taken into account in determining whether to grant relief from the effect of the Rule when the motion is untimely made. Shotwell Mfg. Co. v. United States, 1963, 371 U.S. 341, 83 S.Ct. 448, 9 L.Ed.2d 357; Frazier v. United States, 1948, 335 U.S. 497, 69 S.Ct. 201, 93 L.Ed. 187; Pinkney v. United States, 5 Cir. 1967, 380 F.2d 882, cert. denied 390 U.S. 908, 88 S.Ct. 831, 19 L.Ed.2d 876.

improper because it was based upon the admission of evidence seized pursuant to an illegal search. This contention is without merit. Appellants argue that the affidavit of F.B.I. Agent Gardner, upon which the search warrant was based, was in turn based upon information furnished to Gardner by persons not shown to be credible or to be furnishers of reliable information. We emphasize that Gardner's affidavit incorporated and relied upon the affidavits of James Bishop, the Sheriff of Tishomingo County, Mississippi, and two private citizens, and upon information obtained through F.B.I. channels.

Appellants rely heavily upon Aguilar v. Texas, 1964, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723. *Aguilar* does not help them, as there is scant similarity between the factual situation there and the one here in regard to a magistrate's determination of probable cause. The holding of *Aguilar* was that the search warrant should not have been issued because the affidavit did not provide a sufficient basis for finding probable cause. But there the court pointed out, following Jones v. United States, 1960, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, that an affidavit may be based on hearsay information and it need not reflect the direct personal observation of the affiant. Accord, United States v. Ventresca, 1965, 380 U.S. 102, 108, 85 S.Ct. 741, 13 L.Ed.2d 684; Rugendorf v. United States, 1964, 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887; Monnette v. United States, 5 Cir. 1962, 299 F.2d 847. The requirement of *Aguilar* is that "the magistrate must be informed of some underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, see Rugendorf v. United States, 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887, was 'credible' or his information 'reliable'." The information set forth in the affidavits presented to the magistrate in this case was quite specific, and the reliability of the informants was adequately established. Local law enforcement officers participating in a common investigation are reliable informants. See United States v. Morin, D.C.Conn.1966, 250 F.Supp. 507, 509. We conclude that the requirements of *Aguilar* as to probable cause were fully met.[2]

The search warrant is next attacked as authorizing a general search and constituting a license to search for and seize anything that might in any way incriminate appellants. Reference to the terms of the warrant shows that appellants' contentions are not supportable. The warrant referred to property stolen in violation of the laws of the United States and to tools and instruments designed and intended for use in committing an offense against the United States. The allegedly stolen property was referred to in specific detail as loot from the burglaries of the two banks, and the burglary equipment was described as oxygen and acetylene tanks, along with hoses, cutting torches and tips to be used with oxygen-acetylene equipment, and hammers, punches, hacksaws, etc., suitable for bank burglary.

Appellants also attack the warrant as a license to obtain evidence to convict appellants, in violation of Rule 41, Federal Rules of Criminal Procedure. That Rule, however, expressly authorizes a warrant to search for and seize any property stolen in violation of the laws of the United States or designed or intended for use or which is or has been used as a means of committing a criminal offense. The articles for which this search warrant authorized search and seizure clear-

---

**2.** Spinelli v. United States, 1969, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 was decided after this appeal was taken under submission. We have felt it our duty to weigh the Gardner affidavit for search warrant (including the supporting affidavits) carefully in the light of specificity requirements of *Spinelli* and the gloss it has put on *Aguilar*. *Spinelli* does not help appellants. See further, United States v. Rich, 5 Cir. 1969, 407 F.2d 934.

ly come within the provisions of the Rule. The fact that some of the items that were seized did not come within that category[3] seems to illustrate primarily a meticulous inventory-taking on the part of the F.B.I. agents, and nothing else. The appellants cite no authority for their conclusion, probably for the reason that such meager authority as exists seems to be otherwise. See United States v. Castle, D.C.1962, 213 F.Supp. 52, aff'd on other grounds, 1963, 120 U.S.App. D.C. 398, 347 F.2d 492. See Rule 41(e), F.R.Crim.P., which provides for restoration of the property seized if it is not that described in the warrant and not otherwise subject to lawful detention. The legal seizure of the articles described was not affected by the seizure of additional articles not described.

 Appellants argue that there was no justification for not obtaining an arrest warrant and that there was no probable cause for searching the automobile. It was not necessary, however, for the F.B.I. to proceed by arresting appellants pursuant to an arrest warrant. Search of the automobile was completely justified under the terms of the search warrant, for which there was probable cause, in that the warrant authorized the search of both the lot and the cabin, and the automobile at the time the search warrant was executed was parked in the lot and very close to the cabin. The automobile was one described in the affidavits as used by the habitues of the cabin on numerous occasions including the night of June 20–21 when the West Branch Bank was unlawfully entered.

### IV.

 Appellants contend that they were deprived of their liberty without due process of law because of the failure to grant reasonable bail, the failure to allow them to leave the Northern District of Mississippi, and the failure of the trial court to grant them a continuance. Their argument is that they were unable to prepare their case adequately and to receive the effective assistance of counsel by rulings that prevented their travel and denied them a greater length of time to prepare for trial. These contentions are without merit. Although bail of $100,000 each was set initially, it was subsequently reduced significantly, and on August 22 Moore and Nipp were released from confinement. On August 28 an order was entered that permitted them to depart the Northern District of Mississippi, but since their counsel could not locate them through the address given their bondsman the appellants failed to receive this information. Nipp and Moore were again placed in custody upon the cancellation of their appearance bonds on September 6. Appellants had been informed at their arraignment that they could not leave the Northern District of Mississippi without approval. No objection appears to have been voiced at that time and approval of out of state travel was requested only once. As the government brief points out, a reading of the record shows consistently favorable rulings by the trial court and by the United States Commissioner on motions filed by appellants concerning bail before trial. Appellants were not deprived of any constitutional right in respect to bail. Further, we hold that the reasonable restrictions imposed as to bail did not prejudice their trial preparations in any way made manifest to us.

### V.

A further point raised by appellants is that the statements made by Nipp and Moore to an agent of the F.B.I. were inadmissible because the precautionary procedure required by Miranda v. Arizona, 1966, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974, was not followed. This point was raised in a supplemental brief, and subsequent to oral argument the government took steps to clarify this point by moving the United States District Court for the Northern District of Mississippi to supplement the record by adding copies of the waiver

---

3. The agents inventoried various articles of clothing, toilet articles and the like.

of rights forms that had been referred to in the original record and that the F.B.I. agent testified had been used in the interview with Nipp and Moore. Both Nipp and Moore were returned to the Northern District of Mississippi and a hearing on this motion was held on June 18, 1967. They were present with counsel at the hearing before United States District Judge William C. Keady. Judge Keady entered a finding that the "Your Rights" forms that are attached to his order as exhibits were identical with the waiver of rights forms used by Agents of the Federal Bureau of Investigation at the time of the arrest of appellants Moore and Nipp and at subsequent interviews conducted while they were in jail. The motion to supplement the record was sustained and the record was supplemented to show that the forms referred to in the record on appeal were identical to the waiver of rights forms attached to Judge Keady's order. This form contained the statement "You have the right to talk to a lawyer for advice before we ask you any questions and to have him with you during questioning", and, further, that "if you decide to answer questions now without a lawyer present, you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer". It will thus be seen that the record as supplemented rebuts the contention of Nipp and Moore that they were not fully advised of their constitutional rights. Also, their contention that Agent Johnson did not specifically testify that he informed them that they had a right to have an attorney present during questioning is fully met with the addition to the record of the waiver of rights forms.

## VI.

■ During oral argument of this appeal, reference was made to the decision the Supreme Court had handed down shortly before that time in Bruton v. United States, 1968, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476, which presented the question "whether the conviction of a defendant at a joint trial should be set aside although the jury was instructed that a co-defendant's confession inculpating the defendant had to be disregarded in determining his guilt or innocence". The Supreme Court held that the conviction in *Bruton* should be set aside because of the substantial risk that the jury, despite instructions to the contrary, looked to the incriminating extrajudicial statements in determining petitioner's guilt, and therefore the admission of a co-defendant's confession in the joint trial violated the cross-examination right secured by the Confrontation Clause of the Sixth Amendment. That case has no application to the situation here, not only because the conviction of Brooks must be set aside on other grounds, but also because the statements did not incriminate him.

## VII.

■ Completely without substance is the complaint of appellants' attorney that insufficient opportunity was afforded to prepare the appeal because appellants were incarcerated at a distance and were unavailable to consult with their attorney. It is shown in the record by the affidavit of the United States Marshal for the Northern District of Mississippi that after conviction Nipp was retained in that District from September 29 to December 15, and Moore from September 29 until November 22. These statements are not controverted by appellants. It does not appear that more time was required for conference with counsel respecting the taking of this appeal. No specific facts are raised which suggest the need for a longer period of time for conferences than was in fact available.

We have given careful consideration to other contentions made by appellants on brief or in oral argument. They are not of sufficient merit to require comment.

The conviction of Brooks is reversed and set aside because of the insufficiency of the evidence against him; the convictions of Nipp and Moore are affirmed.

Reversed in part; affirmed in part.