The **UNITED STATES**

v.

**Stephen Wade BLACK.**

**Crim. No. 27448.**

United States District Court,
N. D. Georgia,
Atlanta Division.

July 18, 1972.

**538**

John W. Stokes, Jr., U. S. Atty., Robert L. Smith, Asst. U. S. Atty., Atlanta, Ga., for plaintiff.

Albert M. Horn and Glenn Zell, Atlanta, Ga., for defendant.

## ORDER

EDENFIELD, District Judge.

Defendant, who has been charged by the grand jury with knowingly and intentionally possessing with intent to distribute 32 pounds of marijuana without authorization, in violation of 21 U.S.C. § 841(a) (1) (1970), moves to suppress for use as evidence the marijuana seized by federal agents pursuant to a search warrant from a hidden compartment in a wooden box packed in a crate which had been air-shipped to defendant from San Diego, California. He contends that the application presented to the United States Magistrate for a search warrant should have been denied for failure to show probable cause. A hearing was held on the motion, and defendant requested that the court treat it as a non-jury trial on the general issue since he had no other defense to offer against the charge.

In support of his application for a search warrant in this case, Agent Kelly Goodowens swore out an affidavit in Atlanta before the United States Magistrate which avers the following facts as tending to establish the requisite probable cause:

"Delta Air Cargo Service employee, San Diego, California, while searching for an invoice in the above described box, observed brick shaped packages emitting the odor of marijuana. The box at that time was in the possession of the Delta Air Cargo Service. Sergeant Don Hamlin, San Diego Police Department, Narcotics Squad, observed the brick shaped packages in the above described box and determined that it was marijuana. U. S. Customs officials helped load the above described box containing the marijuana on Delta Flight 108 before its departure on 3/1/72. Delta Flight 108 is a flight scheduled to arrive in Atlanta at 7:07 P.M. The above mentioned box did arrive at the Atlanta airport and was observed by the undersigned."

The last sentence of this part of the affidavit was added by Agent Goodowens after the crate arrived at the Atlanta airport. The Magistrate accompanied Goodowens to the airport that evening and personally observed the arrival of the crate on Delta Flight 108 before issuing the search warrant.

■ Although an affidavit in support of an application for a search warrant may be based on hearsay information, the magistrate (1) must be informed of some of the underlying circumstances from which the informant reached his conclusions and (2) must be informed of some of the underlying circumstances from which the affiant concluded that the informant was credible or his information reliable, before he may make a determination as to probable cause. Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). This two-pronged test must be applied by the magistrate to the informant's report even if that report is corroborated by independent sources. Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L. Ed.2d 637 (1969). If the informant's report fails to pass the *Aguilar* test but is corroborated by independent sources, the magistrate must determine whether the independent corroboration added to

the report makes it as trustworthy as a report which would satisfy *Aguilar* without independent corroboration. Spinelli v. United States, *supra.*

Agent Goodowens testified at the hearing that none of the information he gave the Magistrate, with the exception of the last sentence of his affidavit, was the result of his personal observation. Therefore the task of the Magistrate was to consider the hearsay information in light of *Aguilar* and *Spinelli* to determine its probative value.

Turning first to the report of the Delta employee, the court notes that the Magistrate was informed of some of the underlying circumstances from which the employee concluded that marijuana was being transported in the crate addressed to defendant. Since those circumstances involved the employee's personal observations, the Magistrate was not directly confronted with the possibility of "double" hearsay and had no cause to worry he was relying on a casual rumor. *See* Spinelli v. United States, *supra,* 416–417, 89 S.Ct. 584, 21 L.Ed.2d 637; United States v. Ventresca, 380 U.S. 102, 109–111, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); United States v. Carney, 328 F.Supp. 948, 957–958 (D. Del.1971), aff'd., 455 F.2d 925 (3d Cir. 1972); United States v. Morin, 250 F. Supp. 507 (D.Conn.1966).

■■ However, while the report of the Delta employee satisfied the first part of the *Aguilar* test, it did not satisfy the second. The Magistrate was not informed of the underlying circumstances from which Agent Goodowens concluded that the Delta employee was credible or his information reliable. There were no allegations in the affidavit that the Delta employee had previously supplied accurate information to Sergeant Hamlin concerning shipments of drugs or that he knew from experience the appearance and odor of marijuana. True, the employee's report was corroborated by Sergeant Hamlin. But corroborating information cannot be considered by a magistrate until he determines that the informant's report,

standing alone, does not meet *Aguilar* standards. Spinelli v. United States, *supra,* 393 U.S. 415, 89 S.Ct. 584, 21 L.Ed. 2d 637. Since Agent Goodowens' affidavit did not attest to the credibility of the Delta employee or to the reliability of his information standing alone, the employee's report was not, by itself, sufficiently trustworthy. *See* United States v. Bell, 457 F.2d 1231, 1238 (5th Cir. 1972).

■ The doubts raised by *Aguilar* as to the reliability of the Delta employee's report are, nevertheless, adequately resolved by the corroborating information supplied by Sergeant Hamlin. The affidavit avers that Sergeant Hamlin, a member of the Narcotics Squad of the San Diago police, personally observed the brick shaped packages in the box and determined that they contained marijuana. Again, the Magistrate was informed about the underlying circumstances from which Sergeant Hamlin reached his conclusion, and the first part of the *Aguilar* test was met.

Although Agent Goodowens had never met and knew nothing about Sergeant Hamlin prior to their telephone conversations concerning this case, he and Sergeant Hamlin were participating in a common investigation. The fact that they were physically almost a continent apart and had to join forces by telephone cannot be given much significance in our mobile society. The Magistrate was entitled to rely on the personal observations and conclusions of a member of the narcotics squad of a distant police force in determining whether it was probable that the box the policeman had observed was being used to ship marijuana illegally. *Cf.* United States v. Ventresca, *supra,* 380 U.S. 111, 85 S.Ct. 741, 13 L.Ed.2d 684; Brooks v. United States, 416 F.2d 1044, 1049 (5th Cir. 1969), cert. denied, 400 U.S. 840, 91 S.Ct. 81, 27 L.Ed.2d 75 (1971); United States v. Morin, *supra.* Indeed, the Magistrate went so far as to personally verify at least part of Sergeant Hamlin's report by going to the Atlanta airport and viewing the crate before issuing the

search warrant. It cannot be said that Sergeant Hamlin's report was untrustworthy.

Accordingly, the court finds that the report of the Delta employee, as corroborated by the report of Sergeant Hamlin, was as trustworthy as a report which would have passed *Aguilar*'s tests without independent corroboration.

At the hearing defendant argued that Sergeant Hamlin could not have reached a definitive conclusion about the nature of the material contained in the box unless he opened the box, illegally, and carefully inspected its contents. Since the affidavit does not mention such activity, defendant contends it is, in part, false.

 If it is established at a hearing on a motion to suppress that evidence was seized on the basis of false information which strikes at the heart of a supporting affidavit's showing of probable cause, the court must grant the motion. United States v. Upshaw,. 448 F.2d 1218 (5th Cir. 1971), cert. denied, 405 U.S. 934, 92 S.Ct. 970, 30 L.Ed.2d 810 (1972). In the present case, however, defendant's contentions are merely hypothetical. Defendant offered no proof to back up his claim that Sergeant Hamlin illegally opened the box in San Diego or that the affidavit was in any way false. On the contrary, the averments in the affidavit imply that the Delta employee left the box open after he discovered the brick shaped packages so that the packages were in plain view when Sergeant Hamlin arrived.

██ Defendant also contends that the averment that Sergeant Hamlin "determined" the brick shaped packages contained marijuana is vague and suggests his conclusion was no more than a guess. But the affidavit also avers that Sergeant Hamlin made this "determination" on the basis of personal observation, and the Magistrate could reasonably infer from Sergeant Hamlin's position on the Narcotics Squad that he possessed some expertise in this field. A common-sense reading of the affidavit as a whole leads the court to conclude that the Magistrate had a sufficient basis upon which to find probable cause and to issue the search warrant. *See* United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); United States v. Ventresca, *supra*.

Since defendant has no other defense and the record in the case is complete the court must find defendant guilty as charged.

For the foregoing reasons defendant's motion to suppress is denied and defendant is adjudged and decreed guilty as charged.

It is so ordered.