THE PEOPLE OF THE TERRITORY OF GUAM
Plaintiff-Appellee

v.

MARIANO Q. SALAS
Defendant-Appellant

Criminal No. 78-00008A
District Court of Guam, Appellate Division
October 15, 1979

- - - - -

DUENAS, District Judge; LAURETA, District Judge; HEFNER, Designated Judge

OPINION

PER CURIAM:
 Defendant-Appellant, Mariano Q. Salas was charged with the crimes of receiving stolen property, conspiracy to receive stolen property and perjury. At trial, several statements made by Salas were introduced into evidence over objection. At the close of the People's case, Salas' motion for judgment of acquittal was granted as to the charge of conspiracy to receive stolen property, but the jury returned a verdict of guilty as to the charge of receiving stolen property.

146

During April of 1976, the Department of Public Safety began investigating alleged illegal activities by certain police officers. Lieutenant Joaquin Torre was assigned as the chief investigator for the investigation into police corruption. Sometime thereafter, Torre learned through Lieutenant D.V. Camacho, that Salas "had some information on the investigation."

The evidence shows that Salas had told a fellow officer, A.B. Pangelinan, about information which he had concerning possible police corruption. Defendant and Pangelinan thereafter tried to find someone in the police department whom they could trust to share this information with. Pangelinan approached Lieutenant Francisco Sablan and Lieutenant Camacho, and eventually Salas did share his information with them. Having voluntarily shared this information with police officers Pangelinan, Sablan and Camacho, it is reasonable to conclude that Salas had no reason to believe that the matter would be dropped.

On May 8, 1976, Torre instructed Lieutenant Camacho to ask Salas to come down to the station and answer questions, but Salas did not show up. Whereupon Torre asked Lieutenant Camacho to, "Get him." A patrolman was sent to contact the defendant.

Defendant thereafter appeared and was directed to the Director's conference room where questioning was conducted by Torre. Lieutenants Sablan and Camacho were also in the room, although Sablan did move in and out of the room during the interrogation.

The questioning lasted for approximately one hour and was tape recorded. A transcript of the recording was made and two days later defendant was called back to read and sign the statement.

On April 22 and 27, 1977, defendant was summoned to testify before the Grand Jury, during which time he was questioned almost exclusively concerning his May 8, 1976 statement.

Defendant was also subpoenaed by the Legislature's Select Committee on Police Corruption commanding him to testify before the committee at 10:00 a.m. on April 25, 1977. Along with the subpoena, he was given a copy of the "Standing Rules of the Legislative Committee on Police Corruption." Defendant was never, however formally placed under oath and questioned by the Committee. He did, however, talk with a member of the Committee and staff investigators of the Committee. The subject of the questions related to matters previously revealed at the May 8, 1976 police interrogation.

Appellant argues for reversal of his conviction on several grounds. Initially he alleges error in denying the Motion to Suppress the statement made at the May 8, 1976 meeting, and

147

claims that his further statements to the Grand Jury and the Select Committee should have been suppressed as fruit of a poisonous tree. Furthermore, appellant argues that statements given to the Grand Jury and members of the Select Committee should have been suppressed for failure to comply with the Miranda warnings.

The momentous decision of Miranda v. Arizona, 384 U.S. 436 (1966) set forth rules of police procedure applicable to custodial interrogations. The United States Supreme Court there explained that custodial interrogation means, "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." 384 U.S. at 444, 86 S.Ct. at 1612. It is to be noted however, that any interview will have coercive elements to it, simply by virtue of the fact that the police officer is part of a law enforcement system that may ultimately cause the interviewee to be charged with a crime. But police officers are not required to administer Miranda warnings to everyone whom they question. Nor is the requirement of warnings to be imposed simply because the questioning takes place in the police station, or because the questioned person is one whom the police suspect. Miranda warnings are required only where there has been such a restriction on a person's freedom as to render him "in custody."

Special safeguards are required in the case of incommunicado interrogation of individuals in a police-dominated atmosphere, resulting in self-incriminating statements without full warnings of constitutional rights. Beckwith v. United States, 425 U.S. 345, 96 S.Ct. 1612 (1976). It is this sort of environment to which Miranda by terms was made applicable, and to which it is limited. Oregon v. Mathiason, 429 U.S. 495, 97 S.Ct. 711 (1977).

The situation in People v. Williams, 56 Misc. 2d 837, 290 N.Y.S. 2d 321 (N.Y. 1968) reported in 31 A.L.R. 3d 565, 652 aids in the resolution of this case. There, three hours of questioning of an experienced precinct police officer in the station house squad room by "high ranking police officials" in an effort to determine whether his automobile, the license plate number of which had been identified at the scene of a holdup, had been in his possession, stolen or used without his knowledge, was held not to be a custodial interrogation requiring Miranda warnings. In concluding that the inquiry had never reached the accusatorial stage, the court observed that the interrogation had been confined to the subject of the whereabouts, possession and control of the defendant's automobile at the time in question; that reference by the investigators to the fact that the crime of robbery had been committed had served only to emphasize the need for, rather than the focal point of, the inquiry; and that there had been

no effort to extract a confession from the defendant. The court further noted that the defendant, an experienced police officer, trained to investigate and interrogate and as much at home in the station house environment as the private citizen would be ordinarily at work made him less susceptible to "the type of brow beating inquisitions unfortunate examples of which, in large measure prompted the Miranda safeguards." The station house squad room is always frequented by police officers, was in a manner of speaking, the natural habitat of the defendant, the court said, and the fears, terrors and tensions which undoubtedly possess the mind of the lay suspect when called upon to submit to interrogation in the police station, are entirely foreign to a precinct police officer.

In the present case, there is ample indication that the questioning took place in a context where defendant's freedom to depart was not restricted. The defendant was not placed under arrest, and was a police officer, apparently well versed in Miranda rights, and supposedly arrest procedures. He was not handcuffed or otherwise detained and the interview took place in the police department conference room. It is uncontradicted that the defendant came into the conference room to provide information on police corruption in general.

He had voluntarily provided this information earlier to other members of the police department, two of whom were present at the "interrogation," which thereby dispels defendant's contention that the questioning was conducted in a coercive custodial atmosphere. The occasion was but another attempt on the part of the defendant to repeat his information to the officer who was in charge of the investigation.

After the interview, the defendant left, presumably to continue his police duties. Furthermore, the testimony of Lieutenant Torre as well as the other officers, indicates that the defendant was not the focus of the investigation. It was only after the interview that Torre perceived that the property the defendant received was stolen.

We cannot find that the defendant was the focus or subject of any alleged criminal activity at the time of the interview, nor can we hold that his freedom of action was curtailed in any way. Accordingly, we hold that the May 8th interview was not a custodial interrogation. It is clear from the circumstances of this case that there was no significant deprivation of freedom of action warranting the application of the warnings required by Miranda v. Arizona.

Appellant in his opening brief argued that the statements made by defendant at the Territorial Grand Jury should have been suppressed. However, in his reply brief, he withdrew from the court's consideration of this issue, since he relied strongly on United States v. Mandujano, 416 F.2d 1050 (5th Cir. 1974). Mandujano was reversed by the United States

Supreme Court, 425 U.S. 564, 96 S.Ct. 1768, 48 L. Ed. 2d 212 (1976). Apparently, Mandujano stands for the proposition that Miranda warnings are not required to be given to a grand jury witness, even if that witness were a virtual or putative defendant.

Appellant further argues that statements he made to the chief investigator, counsel and member of the Select Committee on April 26, 1977 should have been suppressed for failure to comply with Miranda. However, it appears that neither the attorney, the senator, nor the investigator was a policeman or police agent. Miranda warnings are not required unless there is custodial police interrogation. Miranda v. Arizona, supra, 384 U.S. 436, 444.

Appellant raises two further arguments. First he argues that the Government should have been estopped from prosecuting him, and second, argues that all the statements to the Grand Jury and the Select Committee should have been suppressed as fruit of a poisonous tree. We find no basis for the estoppel argument, and since there has been no untoward conduct on the part of the Government, appellant's final argument likewise fails.

Accordingly, we AFFIRM the verdict of the court below.