[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-11945
Non-Argument Calendar
_____

D.C. Docket No. 5:11-cr-00024-RS-1

UNITED STATES OF AMERICA

Plaintiff-Appellee,

versus

MICHAEL ANTHONY MITCHELL, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(January 8, 2013)

Before BARKETT, WILSON and JORDAN, Circuit Judges.

PER CURIAM:

Michael Mitchell, Jr., appeals his conviction for knowingly possessing a

firearm and ammunition after having been convicted of a crime punishable by

imprisonment for a term exceeding one year, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  The firearms and ammunition were found during a search executed pursuant to a warrant authorizing the search of Mitchell's home and the vehicles parked on the curtilage of his property.

On appeal, Mitchell argues that the search warrant was not supported by probable cause.  He contends that a confidential tip that he was involved in a drug-related shooting, two trash pulls that produced marijuana residue, and the fact that he had prior arrests for drug-related crimes were insufficient to establish a fair probability that drugs would be found at his residence.  Mitchell further argues that the district court erred in finding that the good faith exception justified the search because, even though a search warrant was issued, no reasonable law enforcement official could have believed that probable cause existed to search the residence.

## I.    Standard of Review

We review a district court's denial of a motion to suppress under a mixed standard, reviewing the district court's findings of fact for clear error and its application of the law to those facts *de novo*.  *United States v. Bervaldi*, 226 F.3d 1256, 1262 (11th Cir. 2000).  "Further, when considering a ruling on a motion to suppress, all facts are construed in the light most favorable to the prevailing party below."  *Id.*

2

## II.    Background

A federal grand jury indicted Mitchell.  Specifically, the indictment charged that on or about July 20, 2010, Mitchell knowingly possessed a Tangfolio 9-millimeter pistol, a Norinco 39-millimeter rifle, a Marlin .22-caliber rifle, 9-millimeter ammunition, and Wolf 39-millimeter ammunition, all of which had been transported in interstate commerce.  Mitchell filed a motion to suppress evidence of the firearms and ammunition, arguing that they were found pursuant to an unlawful search.  He argued that the warrant that authorized the search of his house and vehicle was not supported by probable cause, but merely by hearsay, unsubstantiated informant information, and anonymous tips.  Alternatively, he argued that even if the search of his house were supported by probable cause, the warrant was overly broad as the search of his vehicle was not supported by probable cause.  Consequently, he argued that all of the evidence gathered as a result of the unlawfully issued search warrant should be excluded.

The issuance of the search warrant followed the submission of a search warrant affidavit.  The warrant commanded the executing officers to search for and seize "marijuana in violation of Florida State Statute 893.13, drug related paraphernalia, documents and electronic media evidencing illegal narcotic transactions, and currency believed to be the proceeds of narcotic transactions,

3

articles, items or instruments evidencing violations of Florida State Statute 893.13." The warrant authorized the officers "to enter the said premises and the curtilage thereof and any vehicles parked thereon, and any persons present and then and there to search diligently for the property described in this warrant."

The district court conducted a hearing on the motion to suppress. Captain Faith Bell testified on direct examination that she is the captain of the narcotics division at the Bay County Sheriff's Office (BCSO) and that BCSO's investigation of Mitchell began after a drive-by shooting occurred in Callaway, Florida. Two confidential sources provided information to Deputy Lieutenant Craig Romans that Mitchell was the person who committed the drive-by shooting and that the shooting was drug related. Bell and Lieutenant Mike Branning then assigned Deputy Mike McCrary and Deputy A.C. Lorenz to obtain more information regarding the shooting and the drug dealing to develop probable cause. Lorenz then conducted a trash pull at Mitchell's residence, which produced marijuana inside of a baking soda box. The officers considered this finding significant because baking soda is an agent used to process crack cocaine. Five days later, Lorenz conducted another trash pull and found a marijuana "roach," which Bell described as the smoked end of a marijuana cigarette.

4

Bell then testified that, due to the fact that Lorenz had strict patrol obligations, she wrote the search warrant.  In writing the warrant, Bell relied on four sources of information: the information from Lorenz regarding the two trash pulls; the information from Romans regarding the drive-by shooting; the information from Branning regarding the confirmation of Mitchell's address; and the information from the Department of Corrections (DOC) regarding Mitchell's prior arrest records.  The warrant authorized law enforcement "[t]o search the premises, the curtilage, and any vehicles parked thereon."  The warrant then identified marijuana, as well as other documents, items, and instruments evidencing a violation of the Florida drug statute as the items for which to search.  One day later, Bell and other officers executed the search warrant.  They searched the house and found a loaded 9-millimeter gun in Mitchell's bedroom closet, which they seized.  The officers then searched the rest of the house and seized marijuana and drug-related paraphernalia.  They searched the vehicles on Mitchell's property and seized the firearms found therein.  One of the firearms, an SKS, matched the description of the gun that was used in the drive-by shooting.  Another of the weapons had an obliterated serial number.

The district court denied Mitchell's motion to suppress.  The court found that the issuance of the search warrant was supported by probable cause.

5

Alternatively, even if probable cause did not exist, the court found that the good faith exception to the warrant requirement justified the search of Mitchell's residence and vehicles.  Mitchell then pled guilty to knowingly possessing a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g) and 924(a)(2).  He also admitted to three prior convictions: two for the possession of cocaine with intent to sell or deliver, and one for the introduction of contraband into a county detention facility.  The guilty plea was conditioned on his retaining the right to appeal the denial of his motion to suppress.  The district court sentenced Mitchell to 120 months' imprisonment.  Mitchell timely appealed.

## III.  Analysis

### a. *The Probable Cause Determination*

The Fourth Amendment provides for the right to be free of unreasonable searches and seizures and mandates that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation."  U.S. Const. amend. IV.  "Probable cause to support a search warrant exists when the totality of the circumstances allows the conclusion that 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'"  *United States v. Kapordelis*, 569 F.3d 1291, 1310 (11th Cir. 2009) (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332 (1983)).  An affidavit in request of a search

6

warrant "should establish a connection between the defendant and the residence to be searched and a link between the residence and any criminal activity." *United States v. Martin*, 297 F.3d 1308, 1314 (11th Cir. 2002). The magistrate's probable-cause determination is ultimately a "practical, common-sense decision." *Gates*, 462 U.S. at 238, 103 S. Ct. at 2332. We afford "great deference to a lower court's determination that the totality of the circumstances supported a finding of probable cause." *United States v. Steiger*, 318 F.3d 1039, 1046 (11th Cir. 2003) (internal quotation marks omitted).

A search warrant must "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. A warrant that fails to sufficiently state the places to be searched or things to be seized is unconstitutionally overbroad. *United States v. Travers*, 233 F.3d 1327, 1329 (11th Cir. 2000). A vehicle search is permissible under the Fourth Amendment if it is authorized by the terms of a valid search warrant or, where agents conduct a search without a warrant, if independent probable cause exists that contraband or evidence will be found in the vehicle. *See United States v. Tamari*, 454 F.3d 1259, 1261–62 (11th Cir. 2006). The former Fifth Circuit[1] held on several occasions that a

---

[1] We have adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981. *Bonner v. City of Prichard, Alabama*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

7

warrant authorizing the search of an individual's property was sufficient to support a search of a vehicle parked on the premises. *See United States v. Cole*, 628 F.2d 897, 899–900 (5th Cir. 1980) (holding that a warrant to search the rear apartment in a one-story duplex was sufficient to authorize a search of a truck inside a carport attached to the apartment); *United States v. Napoli*, 530 F.2d 1198, 1200 (5th Cir. 1976) (holding that a warrant's reference to "the premises known as 3027 Napoleon Avenue" was sufficient to include a vehicle parked in the driveway on those premises) (internal quotation marks omitted); *Brooks v. United States*, 416 F.2d 1044, 1050 (5th Cir. 1969) (holding that the search of an automobile was permissible as the warrant authorized the search of both a cabin and the adjacent lot where the automobile was parked).

Here, the district court correctly ruled that the search warrant affidavit established probable cause that drug-related evidence would be found at Mitchell's residence. Two separate trash pulls conducted at Mitchell's residence each produced drugs and drug-related evidence. Specifically, the pulls produced a smoked marijuana cigarette as well as marijuana residue inside a box of baking soda, a substance used to create crack cocaine. Mitchell's narcotics activity was further supported by his previous drug-related arrests and the tip that he was involved in a drug-related shooting. Viewing this evidence in the aggregate, the

8

magistrate made the common-sense determination that a fair probability existed that more drug-related evidence would be found at Mitchell's residence. *See Gates*, 462 U.S. at 238, 103 S. Ct. at 2332. Accordingly, the district court did not err in concluding that the magistrate issuance of the search warrant was supported by probable cause.

Likewise, Mitchell's argument that the officers lacked probable cause to search the vehicles parked in his driveway is unavailing. First, the search warrant explicitly authorized the executing officers to search the vehicles parked on the curtilage of Mitchell's property. Because probable cause existed to believe a search of Mitchell's residence would yield drug-related evidence, the warrant permissibly authorized the search of the vehicles parked on Mitchell's property. *See Tamari*, 454 F.3d at 1261–62. Moreover, a search of vehicles located on the premises to be searched is valid even if the search warrant had been silent as to the vehicles. *See Cole*, 628 F.2d at 899–900.

### b. *The* Leon *Good Faith Exception*

Next, Mitchell argues that the good faith exception does not apply because no reasonable law enforcement official could have believed that the search was supported by probable cause. The good faith exception to the exclusionary rule was set forth by the Supreme Court in *United States v. Leon*, 468 U.S. 897, 922,

9

104 S. Ct. 3405, 3420 (1984). *See Martin*, 297 F.3d at 1312–13. Typically, "[e]vidence seized as the result of an illegal search may not be used by the government in a subsequent criminal prosecution." *Id.* at 1312. The exclusionary rule is "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect." *Id.* (internal quotation marks omitted). The exclusionary rule will not apply however, when law enforcement agents conduct a search while acting with an objective good faith reliance on a search warrant issued by a judge or magistrate. *Leon*, 468 U.S. at 920, 104 S. Ct. at 3419. "We review *de novo* whether the *Leon* good faith exception to the exclusionary rule applies to a search, but the underlying facts upon which that determination is based are binding on appeal unless clearly erroneous." *United States v. Robinson*, 336 F.3d 1293, 1295 (11th Cir. 2003) (internal quotation marks omitted).

When considering the applicability of the good faith exception, the issue is not the magistrate's probable cause determination, but rather whether the officers executing the warrant relied on that determination in good faith. *United States v. Glinton*, 154 F.3d 1245, 1257 (11th Cir. 1998). The officers' actions must be considered under the totality of the circumstances when determining whether the

10

officers' reliance on the search warrant was objectively reasonable. *Martin*, 297 F.3d at 1318.

The good faith exception applies in all but four limited sets of circumstances:

> (1) [W]here the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) where the issuing magistrate wholly abandoned his judicial role . . . ; (3) where the affidavit supporting the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where, depending upon the circumstances of the particular case, a warrant is so facially deficient —i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid.

*Id.* at 1313 (citation and internal quotation marks omitted).

To show that no reasonable law enforcement official could have believed that probable cause existed, a defendant must establish that a reasonably well-trained law enforcement officer could not have believed in objective good faith, despite the magistrate's authorization, that the search was legal. *United States v. Taxacher*, 902 F.2d 867, 871 (11th Cir. 1990). The threshold for establishing this *Leon* exception is a high one, as "'[i]n the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination.'" *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1245 (2012) (quoting *Leon*, 468 U.S.

11

at 921, 104 S. Ct. at 3419).  The good faith exception thus applies where "it was *not entirely unreasonable* for [the law enforcement officer] to believe that what he wrote in the affidavit would be sufficient to support a finding of probable cause." *Martin*, 297 F.3d at 1315 (emphasis in original).

The district court did not err in concluding that Bell and the other officers relied in good faith on the magistrate's probable cause determination.  Assuming, *arguendo*, that the search warrant affidavit failed to set forth probable cause to support the search warrant, the officers' reliance on the warrant was still objectively reasonable and in good faith.  After hearing that Mitchell was involved in the drug-related shooting, Captain Bell started the investigation of Mitchell in order to develop more probable cause.  Before submitting the search warrant affidavit, Bell verified Mitchell's address, that two trash pulls at that address each produced marijuana residue, and that Mitchell had prior drug arrests and a felony conviction.  Such conduct shows that Bell's later reliance on the legitimacy of the search warrant was in good faith, as she had compiled many pieces of evidence before submitting her search warrant affidavit to the magistrate.

Furthermore, after Bell submitted the affidavit, the magistrate—and later, the district court—found that probable cause existed to support the issuance of the search warrant.  While we have rejected a "reasonable jurist" standard for

12

measuring whether an indicium of probable cause exists, the fact that at least some jurists—the magistrate and district court judges in this case—found probable cause to exist "bolster[s]" a finding that the officer acted reasonably under the circumstances. *See Taxacher*, 902 F.2d at 872. Accordingly, the search warrant affidavit contained sufficient indicia of probable cause for a reasonably well -trained officer to conclude that the issuing magistrate's probable cause determination was correct. *See Martin*, 297 F.3d at 1313. None of the other four exceptions to the application of the good faith exception apply here. *See id.* Mitchell did not assert before the district court, and does not contend on appeal, that the issuing magistrate wholly abandoned his judicial role. Additionally, the issuing magistrate was not misled by any alleged omissions or misstatements contained in the search warrant affidavit.

The search warrant authorizing the search of Mitchell's home and vehicles was supported by probable cause, and the executing officers relied on the warrant in good faith. Accordingly, we affirm.

**AFFIRMED.**

13