**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Michel Joseph NAPOLI, Defendant-Appellant.**

**No. 75–1441.**

United States Court of Appeals, Fifth Circuit.

April 29, 1976.

Rehearing and Rehearing En Banc Denied June 24, 1976.

---

**54.** *See* 42 U.S.C. § 2000e–5(k).

Robert Glass, New Orleans, La., for defendant-appellant.

Gerald J. Gallinghouse, U. S. Atty., Mary Williams Cazalas, Asst. U. S. Atty., New Orleans, La., for plaintiff-appellee.

Before GODBOLD, DYER and MOR-GAN, Circuit Judges.

GODBOLD, Circuit Judge:

Appellant Napoli was convicted of offenses involving LSD. All issues on appeal relate to the validity of searches.

In April 1974 Drug Enforcement Administration officers obtained a search warrant for a first class package addressed "Michael Joseph, 3027 Napoleon Avenue, New Orleans, Louisiana 70125." (Appellant's full name is Michel Joseph Napoli.) Agents opened the package at the post office and discovered LSD. They removed part of the contents and dusted the inside of the package with fluorescent powder and resealed it.

The officers arranged for a controlled and surveilled postal delivery of the package to the mail box at 3027 Napoleon Avenue. The surveilling officers were in radio communication with an agent waiting in the office of a United States magistrate in New Orleans. The waiting officer was notified by radio from the scene when the package had been placed in the mail box. He completed a previously prepared search warrant application and presented it to the magistrate, who issued a warrant. The warrant recited [brackets are in original]:

Affidavit having been made before me by Special Agent Raymond Egan Jr. that he [has reason to believe] that [on the premises known as] 3027 Napoleon Avenue, New Orleans, Louisiana, being a large, multiple-story, wooden-frame residential dwelling, in the Eastern District of Louisiana there is now being concealed certain property, namely Lysergic Acid Diethylamide or its derivatives (etc.) . . .

\* \* \* \* \* \*

and as I am satisfied that there is probable cause to believe that the property so described is being concealed on the [premises] above described and that the foregoing grounds for application for issuance of the search warrant exist.

Surveilling officers were notified by radio that the warrant had been issued. Napoli and his girl friend were on the

porch at 3027 Napoleon Avenue when the mailman delivered the parcel. The girl was seen to walk toward the mailbox, after which she and Napoli descended the stairs onto Napoleon Avenue and then passed from view, proceeding along the driveway of 3027 Napoleon Avenue and toward the back of the house. After about five minutes officers closed in. As officers approached, Napoli was padlocking the door of a camper bus parked in the driveway. He was arrested outside the door of the vehicle and after he had locked it. The keys to the padlock and traces of fluorescent powder were found on his person. Officers searched the house and yard and, opening the camper with the key, made a brief search of it, all without success. After approximately two hours of searching, the officers, unable to find elsewhere the LSD or the elements of the package in which it had arrived, began taking the camper apart, and in a secret compartment found the LSD.

### 1. The post office search

■ The sufficiency of the affidavit supporting the warrant for the post office search is questioned on several grounds, only one of which requires discussion. The affidavit recited that 3027 Napoleon Avenue was the residence of Napoli's mother, a fact which "is recorded in our files by documents completed at the time of NAPOLI'S arrest, above, and in the New Orleans telephone & City directories." Appellant centers upon the reference to "NAPOLI'S arrest, above." Earlier in the affidavit it had been set out that in April 1973 Napoli had been arrested on state drug charges. The fact that Napoli's mother resided at 3027 Napoleon Avenue had surfaced, and been entered on state court records, when Napoli was booked on the state charges. The affidavit did not reveal, although the affiant knew, that a state court had suppressed as illegally seized the evidence on the basis of which the state arrest had been made, and that subsequently a nolle prosequi of the state charges had been entered. Napoli

claims that the booking information was tainted by the allegedly illegal state arrest which in turn tainted the affidavit supporting the post office search warrant, and also that failure of the affiant to reveal what he knew tainted the affidavit and the warrant. These are arguments which it is not necessary for us to discuss. The New Orleans telephone and city directories were independent sources free of any possible taint.

Other contentions concerning the post office search warrant are without merit. The warrant was valid.

### 2. The search incident to arrest

Napoli concedes that this search is valid if the post office search, which led to the arrest, was valid.

### 3. Search of the camper

■■ We conclude that the search of the camper was authorized by the warrant. We think that the reference to "on the premises known as 3027 Napoleon Avenue" was sufficient to embrace the vehicle parked in the driveway on those premises. Arguably the language "being in a large, multiple-story, wooden-frame residential dwelling," limits the generality of the preceding language. But in search warrants there is no place for "[t]echnical requirements of elaborate specificity once exacted under common law pleadings." *U. S. v. Ventresca,* 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684, 689 (1965). "It is enough if the description is such that the officer with a search warrant can, with reasonable effort ascertain and identify the place intended." *Steele v. U. S.,* 267 U.S. 498, 503, 45 S.Ct. 414, 416, 69 L.Ed. 757, 760 (1925). There can be little, if any, doubt that the intent of the officers in this instance was to seize the controlled package and its contents wherever they might be on the premises at 3027 Napoleon Avenue, whether when taken from the mailbox they were carried inside the house, retained on the front porch, carried down the steps to the sidewalk, taken to the yard, or removed to

an outbuilding or to a vehicle on the premises. The object of the search was movable contraband. A controlled search for it could not effectively be commenced until after it had been removed from the mailbox by someone. The ultimate or immediate destination of the movable contraband, when removed from the mailbox and actually moving, was neither known nor knowable in advance.

In *U. S. v. Anderson*, 485 F.2d 239 (C.A.5, 1973), *cert. denied*, 415 U.S. 958, 94 S.Ct. 1487, 39 L.Ed.2d 573 (1974), a duplex residence with its own grounds was described in a search warrant as 1209 Avenue Q, Apartment B. We held a search of the flower bed outside the house was valid under the warrant. In *Brooks v. U. S.*, 416 F.2d 1044 (C.A.5, 1969), *cert. denied*, 400 U.S. 840, 91 S.Ct. 81, 27 L.Ed.2d 75 (1970), a warrant was issued for the search of the premises known as the lot and cabin of Andy Shaw. A search of both the cabin and of the automobile in which two of the defendants had driven to the cabin turned up many incriminating items. The court upheld the search of the car:

> Search of the automobile was completely justified under the terms of the search warrant, for which there was probable cause, in that the warrant authorized the search of both the lot and the cabin, and the automobile at the time the search warrant was executed was parked in the lot and very close to the cabin.

416 F.2d at 1050.

See also *U. S. v. Long*, 449 F.2d 288 (C.A.8, 1971), where the warrant described the subject of the search as "the premises commonly known as Tocco Bros. Sea Food Co., 1013–15 North Eighth Street, St. Louis, Missouri, being a one-story red brick structure with a white and grey painted front and a white painted rear, the building being on the west side of Eighth Street between Carr St. and Cole St." A trash barrel outside the building, almost touching the building, was held to be part of the "premises" to be searched. Here the driveway was on the property at 3027 Napoleon Avenue, and the camper was parked on that driveway almost touching the building.

Since we hold that the search of the camper was authorized by the warrant we do not discuss the issue of whether the vehicle could be validly searched without a warrant.

AFFIRMED.