[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 10 
The appellant, David Nicholas Frederick Cooper, appeals from a conviction of felony possession of marijuana, a violation of § 20-2-70, Code of Alabama 1975, and a sentence of ten years' imprisonment and a $25,000 fine. On April 12, 1983, about 6:30 p.m., the appellant landed a small twin engine aircraft at the Sylacauga airport. He taxied the aircraft up the runway, and then out of sight back down to the far end of the runway, parking it away from the airport buildings. While taxiing he turned off the plane's lights. The appellant failed to respond to the airport radio controller's attempts to make radio contact, and, therefore, the police were eventually called. At 8 p.m., Sergeant Green of the Sylacauga Police Department was dispatched to the airport, where Mr. Bill James, the radio controller, advised Sergeant Green of the situation. The officer drove down the runway, arriving at the plane just as the appellant was removing his luggage. As the officer walked up to the plane he could smell the odor of marijuana emanating from the aircraft. He obtained the appellant's pilot's license. The appellant told the officer that he was having engine trouble — that one of the engine's oil warning lights was flashing. The appellant placed his luggage in the patrol car, and then voluntarily and freely consented to the officer's search of the interior of the plane.
Just as Sergeant Green began his search, Deputy Sheriff McNeil arrived and aided in the search. A third officer, Patrolman Holmes, also arrived, from whom Deputy McNeil borrowed a flashlight. The officers testified that the search was a "spot search" conducted for their own safety, that the purpose of the search was to look for weapons and/or persons. In conducting the search, the officers removed a back panel, looked under the seats, in the glove compartment, and on the floor of the plane. During this search, Sergeant Green observed what he believed to be marijuana seeds lying on the floor of the plane. The appellant then locked the plane and accompanied the officers to the control tower.
At the control tower, Mr. James advised the appellant that the plane was not safe where it was parked. The appellant said that the plane was a rental plane from Birmingham and one of the engines' low oil warning lights was flashing. Mr. James said the craft could be safely taxied with only one engine operating. (Mr. James testified that at that time he also knew that that particular type of airplane could not be rented in Birmingham). The appellant was driven back to the plane and he taxied it to the hanger area. It was then about 9:30 p.m., so he locked the plane once again and asked the officers where would be a convenient place to stay the night. He was then driven to a nearby motel. From the police station, Sergeant Green determined that the airplane was leased from Golden Arrow Leasing Company in Las Vegas, Nevada.
Meanwhile, Detective Chief Charles Humphries and two other detectives were inspecting the end of the runway where the plane had been discovered. In the grass area surrounding the runway, the detectives saw tracks that appeared to be from a four-wheel-drive vehicle. The tracks were leading away from the end of the runway. After Chief Humphries had been inspecting the area for approximately 40 minutes, he sent Officer Holmes back to the motel to try and find the appellant. Several police officers were involved in searching the area for the appellant at the local motels, restaurants, and bars, but were unable to locate him. All officers except Holmes returned to the plane, which way parked under security at the airport. Chief Humphries then instructed Detective Brasher to open the plane. Detective Brasher looked inside, but it was too dark to see. A canine unit arrived around 11:30 p.m., entered the plane, and found an envelope marked on the outside with the name "Holiday Inn." It was ultimately determined to contain 3.7 *Page 11 
grams of marijuana. The plane was then moved inside the hanger, and the doors sealed by a U.S. Customs Officer who had arrived.
While this latter search was in progress, Officer Holmes, who had still been looking for the appellant, advised that he had located him. The police officers and the canine unit then went to the appellant's motel room. Detective Brasher knocked on the appellant's door, announced that it was the police, and approximately three to five minutes later the appellant opened the door. Upon opening the door, Detective Brasher could smell the odor of marijuana. Detective Brasher then advised the appellant that he was under arrest, read him his Miranda
rights, and asked him for consent to search the room, which was given. Detective Brasher then entered the room, went into the bathroom area, and found next to the sink an ashtray containing marijuana. Meanwhile, the canine unit entered the room and the dog immediately jumped up against the dresser. Detective Brasher then asked the appellant where the marijuana was. He told the officers it was behind the dresser drawer, for them to pull it out and it was taped on the back of the drawer. The officers pulled out the drawer and removed the marijuana.
 I
The appellant contends that the various searches of the airplane and of his motel room were unconstitutional.
 A.
There were three separate searches of the airplane. The first occurred out at the end of the runway. It is undisputed and not contested that this search was pursuant to the voluntarily and freely given consent of the appellant. Schneckloth v.Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). At the conclusion of this "spot search," the appellant locked the plane and accompanied the officers to the control tower. Furthermore, after he taxied the plane to the hanger area, he again locked the plane before being driven by the police to a nearby motel. The act of locking the plane effectively revoked the appellant's consent to any future searches.
The next search was conducted by Detective Brasher at about 10:45 p.m., when he opened the plane door and looked inside, but, because of the poor lighting conditions, could not see anything. The smell of marijuana, however, was still strong. Therefore, he closed the door and a canine unit in Talladega was called. The canine unit arrived around 11:30 p.m., and conducted the third search. It was during this search that the 3.7 grams of marijuana in the "Holiday Inn" envelope was found. Because these latter two searches were conducted without the issuance of a search warrant, one of the recognized exceptions to the Fourth Amendment's search warrant requirement must apply in order for the searches to be valid. The state argues that this case falls within the vehicle exception. See Carroll v.United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), and its progenies.
Initially, it must be determined whether the automobile exception to the warrant requirement applies to an airplane. The Court of Appeals for the Eleventh Circuit has held that it does. See United States v. Rollins, 699 F.2d 530 (11th Cir. 1983). We agree.
The next question is whether the police officers had probable cause to believe that that airplane contained contraband. To make such a determination, "[t]he facts are judged on the basis of whether a reasonably prudent man of the officer's experience and training, looking at the `totality of the circumstances and the inferences' therefrom, would conclude that there is probable cause to believe that the vehicle or the individual is involved in violating the law." United States v. Thomas,536 F. Supp. 736, 743 (M.D.Ala. 1982).
At the time of the subsequent searches, the police officers knew the following facts: that appellant taxied the airplane without its running lights to the far end of the runway and then failed to respond *Page 12 
to the attempts to make radio contact; that there existed a strong odor of marijuana both inside and outside the airplane; that Deputy McNeal and Sergeant Green observed inside the plane during the consent search, that only the two pilot's seats were intact, the other seats being piled up in the back, and that there were marijuana seeds on the carpet. Further, they knew that the appellant's statement that he rented the plane in Birmingham was not true and that that type airplane was not available for rent in Birmingham; and they saw what appeared to be fresh, four-wheel-drive tracks leading away from where the plane was parked at the end of the runway. The police officers clearly possessed sufficient information to establish probable cause. The United States Supreme Court has recently hinted that "plain odor" alone may justify a warrantless search of a container discovered during a search. United States v. Johns, ___ U.S. ___, 105 S.Ct. 881, 83 L.Ed.2d 890 (1985).
The officers had effectively seized the airplane when they began guarding it as soon as it was parked next to a hanger. They could have searched it right then, because "an individual's expectation of privacy in a vehicle and its contents may not survive if probable cause is given to believe that the vehicle is transporting contraband." United States v.Ross, 456 U.S. 798, 823, 102 S.Ct. 2157, 2172, 72 L.Ed.2d 572
(1982). The appellant argues that because the airplane was no longer mobile, a warrantless search was no longer permissible. The law is "clear that the justification to conduct such a warrantless search does not vanish once the car has been immobilized." Michigan v. Thomas, 458 U.S. 259, 261,102 S.Ct. 3079, 3080, 73 L.Ed.2d 750 (1982). See also Florida v. Meyers,466 U.S. 380, 104 S.Ct. 1852, 80 L.Ed.2d 381 (1984), UnitedStates v. Ross, supra, Texas v. White, 423 U.S. 67,96 S.Ct. 304, 46 L.Ed.2d 209 (1975), and Chambers v. Maroney,399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). In fact, "[t]here is no requirement that the warrantless search of a vehicle occur contemporaneously with its lawful seizure." United States v.Johns, supra. Therefore, the officers' latter two searches that occurred approximately one hour and two hours later, respectively, were constitutionally permissible.
The appellant also argues that there were no exigent circumstances, and, therefore, that the searches were not valid. The presence of exigent circumstances coupled with probable cause to search is a separate and distinct exception to the warrant requirement. The appellant's intermingling of the two exceptions is understandable, because the distinction between the two exceptions has become unclear over the years. However, the Supreme Court has recently restated the separateness of the two exceptions: "A vehicle lawfully in police custody may be searched on the basis of probable cause to believe that it contains contraband, and there is no requirement of exigent circumstances to justify such a warrantless search." United States v. Johns, supra. See alsoMichigan v. Thomas, supra, 458 U.S. at 261-262,102 S.Ct. at 3080-81, reversing "the Court of Appeals [which] held that the absence of `exigent circumstances' precluded a warrantless search."
We therefore hold that the two latter searches were proper.
 B.
The appellant contends that the evidence taken in the search of his motel room "clearly and unequivocally constitutes `fruits of the poisonous tree,'" see Wong Sun v. United States,371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), and therefore that the evidence should have been suppressed. Having held that the searches of the airplane were proper, we hold that the "fruit of the poisonous tree" doctrine does not apply. Further, the search occurred after the appellant consented to his room being searched. The appellant does not contest his voluntary giving of consent to the search of his room.
 II.
The appellant has raised three other issues, 1) the relevancy of certain testimony *Page 13 
admitted at trial, 2) the sufficiency of the proof of possession of contraband, and 3) whether the quantity of the marijuana was sufficient to warrant a finding of felony possession. After reviewing the record, we are of the opinion that the trial court did not err in its rulings on these issues, but that a discussion of them is unwarranted.
This case is due to be affirmed.
AFFIRMED.
All the Judges concur.