531 So.2d 682 (1987)
David M. ROBINETTE, Charles Price, Riley M. Fenn
v.
STATE.
4 Div. 478.
Court of Criminal Appeals of Alabama.
September 8, 1987.
Rehearing Denied October 13, 1987.
*684 Cada M. Carter of Carter, Bledsoe & Hall, Dothan, for appellant Robinette.
Samuel L. Adams, Dothan, for appellant Price.
Phyllis J. Logsdon, Dothan, for appellant Fenn.
Charles A. Graddick, Atty. Gen. and J. Elizabeth Kellum, Asst. Atty. Gen., for appellee.
*685 PATTERSON, Judge.
David M. Robinette, Charles Price, Riley M. Fenn, and Ivy K. Hatcher were jointly indicted for possession of marijuana, in violation of § 20-2-70, Code of Alabama 1975. The cases were consolidated for trial and tried before a jury, and all of them were found guilty, as charged. Robinette and Price were each sentenced, as habitual offenders, to ten years' imprisonment and fined $7,500; Fenn was sentenced, as a habitual offender, to fifteen years' imprisonment and fined $15,000; and Hatcher was sentenced to eight years' imprisonment, fined $5,000, and ordered to pay court costs. Robinette, Price, and Fenn appealed, and their appeals were consolidated. Hatcher, apparently, did not appeal. We will address the appeals of Robinette, Price, and Fenn in this opinion.
Ivy K. and C.W. Hatcher resided at 3400 Cathy Lou Road, Dothan, Alabama. On October 31, 1984, several officers of the Houston County Sheriff's Department executed a search warrant at this address. The search warrant authorized a daytime search of the Hatchers' residence at 3400 Cathy Lou Road and their persons, for marijuana. Upon arrival at the residence, the officers knocked on the door. About two minutes after their knocking, appellant Price opened the door. The officers asked him if the Hatchers were at home. Price stated that they were not and that he was the only person in the house. The officers showed Price the search warrant and told him that they were going to search the house. They entered the house and discovered Ivy K. Hatcher and appellant Fenn sitting on a bed in a back bedroom. A brown paper bag, which was sitting on the floor, near the foot of the bed, contained plastic bags filled with a "green brown vegetable material." This material was later determined to be marijuana.
Upon finding the bathroom door locked, the officers asked Hatcher if anyone was in the bathroom, and she said, "No." In trying to force the bathroom door open, they discovered that someone was in the bathroom, attempting to prevent the officers from opening the door. Upon forcing the door open, they discovered appellant Robinette in the bathroom and observed him discarding something in a clothes hamper. The officers retrieved the item from the clothes hamper; it was a loaded .32 caliber pistol. Robinette was attired in a robe and was in his "stocking feet." Upon frisking Robinette, the officers discovered a syringe in his sock. No drugs were found on his person. Upon further searching of the residence, the officers discovered a bag containing "green brown vegetable material" in the trash compactor in the kitchen. This was later determined to be marijuana.
Shortly after the officers had entered the house, appellant Fenn was observed attempting to leave through the kitchen door. As an officer approached him, he threw a sack on the floor. Upon examining the sack, the officer discovered that it contained three "baggies" of greenish-brown vegetable material, which was later determined to be marijuana. Fenn was taken into custody and searched. A small envelope containing greenish-brown vegetable material and a straw containing white powder were found in his pocket. Price was searched, and no contraband was found on him; however, $5,000 was discovered in his front pocket.
There were four vehicles parked in the yard, and they were searched. In the glove compartment of Hatchers' automobile, the officers discovered a straw containing white residue. In Robinette's automobile, they discovered a set of scales; six partially-burned, hand-rolled marijuana cigarettes containing material that was later determined to be marijuana; a film canister containing greenish-brown vegetable material, later determined to be marijuana; two mirrors; and a small amount of greenish-brown seeds. In Price's automobile, they found no controlled substances, but did discover a bottle of caffeine pills, which were similar to caffeine pills found in the house. The search of the house disclosed various additional drugs and drug paraphernalia in the Hatchers' bedroom and in the half-bath adjacent to the bedroom. Among these items were scales, a mixer, a screen, funnels, mixing powder, rolling papers, bags, *686 syringes, greenish-brown vegetable matter, white powder, and various kinds of pills.

I
All three appellants contend that the trial court committed reversible error in denying their motions for judgment of acquittal because the prosecution's evidence was not sufficient to prove possession of marijuana.
Before a person can be convicted of violating § 20-2-70, it must be proven beyond a reasonable doubt that he was in actual or constructive possession of one of the substances enumerated therein. Hamilton v. State, 496 So.2d 100 (Ala.Cr.App. 1986); Radke v. State, 52 Ala.App. 397, 293 So.2d 312 (1973), aff'd, 292 Ala. 290, 293 So.2d 314 (1974). Constructive possession arises only where the illegal substance is found on premises owned or controlled by the accused. Campbell v. State, 439 So.2d 718 (Ala.Cr.App.), rev'd on other ground, 439 So.2d 723 (Ala.1983); Williams v. State, 340 So.2d 1144 (Ala.Cr.App.1976), cert. denied, 340 So.2d 1149 (Ala.1977). When constructive possession is relied on, the prosecution must also prove beyond a reasonable doubt that the accused had knowledge of the presence of the controlled substances. Campbell v. State; Yarbrough v. State, 405 So.2d 721 (Ala.Cr. App.), cert. denied, 405 So.2d 725 (Ala. 1981). This knowledge may be inferred from the accused's exclusive possession, ownership, and control of the premises. Temple v. State, 366 So.2d 740 (Ala.Cr. App.1978). When the accused is not in exclusive possession of the premises, however, this knowledge may not be inferred unless there are other circumstances tending to buttress this inference. Korreckt v. State, 507 So.2d 558 (Ala.Cr.App.1986); Temple v. State. While non-exclusive possession may raise a suspicion that all the occupants had knowledge of the contraband found, a mere suspicion is not enough. Some evidence that connects a defendant with the contraband is required. Grubbs v. State, 462 So.2d 995 (Ala.Cr. App.1984); Temple v. State.
In the cases sub judice, we first consider this contention as it relates to appellant Price. There is no evidence that Price lived in or occupied any part of the house. In fact, the evidence is to the contrary. Only one bedroom was used or occupied and, obviously, that was by the Hatchers. No contraband was found on Price's person or in his automobile. There was no evidence that he was even in a position to observe any contraband. He came from the kitchen when he opened the door for the officers, but there was no evidence of contraband in plain view in the kitchen at that time. The evidence does show that he was untruthful with the officers when, upon answering the door, he told them that he was the only person in the house, and he had $5,000 on his person. As far as we can tell from the record, he was fully clothed at the time.
Just as the mere presence of a person at the time and place of a crime is not sufficient to justify a conviction for the commission of that crime, so the presence of the accused in a place where a controlled substance is found is not, in and of itself, evidence of possession. German v. State, 429 So.2d 1138 (Ala.Cr.App.1982).
"Mere presence of the accused on the premises, or simply his proximity to the drug, does not itself enable such a deduction. Nor is mere association with another, standing alone, enough even when the other is known to possess the drug. But, as has frequently been held, presence, proximity or association may establish a prima facie case of drug-possession when colored by evidence linking the accused to an ongoing criminal operation of which that possession is a part."
United States v. Staten, 581 F.2d 878, 884-85 (D.C.Cir.1978) (footnotes omitted).
The evidence offered by the prosecution to establish Price's constructive possession of the marijuana is entirely circumstantial. In reviewing a conviction based on circumstantial evidence, this court must view that evidence in the light most favorable to the prosecution. Cumbo v. State, 368 So.2d 871 (Ala.Cr.App.1978), cert. denied, 368 So.2d 877 (Ala.1979). The test to be applied is whether the jury might have reasonably found that the evidence excluded *687 every reasonable hypothesis but guilt. Id. The action of the trial court in denying a motion for acquittal, in denying a motion to exclude the evidence, in refusing to give the affirmative charge, and in denying a motion for a new trial, must be reviewed by determining whether there existed legal evidence before the jury, at the time the motions were made, from which the jury by fair inference could have found the defendant guilty. Thomas v. State, 363 So.2d 1020 (Ala.Cr.App.1978).
Applying these legal principles to the facts of the Price case, we must conclude that there was insufficient evidence presented by the prosecution to connect Price with the marijuana. The evidence cannot support a fair inference by the jury that Price had knowledge of the contraband. The prosecution's evidence fell short of excluding every reasonable hypothesis except that of guilt. Admittedly, Price's conduct was suspicious; however, the evidence connecting Price with the marijuana his presence in the house, his actions at the door, and the $5,000 on his person standing alone, could be reasonably explained on a theory consistent with his innocence. The record supports a reasonable inference that Price was a casual visitor on the premises. Moreover, Hatcher, for any number of reasons, could have instructed him to answer the door and tell anyone there that there was no one present in the house. Finally, to associate the $5,000 with the marijuana is pure conjecture. There is no evidence linking Price with the marijuana or an ongoing criminal operation. Accordingly, in the case of Price, the trial court committed reversible error when it denied Price's motion for a judgment of acquittal. Thus, Price's conviction must be reversed and a judgment rendered in his favor.
In the case of appellant Fenn, the prosecution's evidence showed that the officers observed Fenn attempt to leave the house through the back door shortly after the search began and, when approached by an officer, throw a bag on the kitchen floor. The bag contained material that was later determined to be 51.42 grams of marijuana. The prosecution's evidence established that Fenn was in actual possession of the illegal substance. This evidence alone was sufficient to warrant his conviction. The motion for judgment of acquittal in his case was properly denied.
In the case of appellant Robinette, the prosecution's evidence showed that a search of his automobile revealed six partially-burned marijuana cigarettes and a film canister containing 7.44 grams of marijuana. This evidence, along with the evidence of his conduct prior to the search of his car, established Robinette's constructive possession of the marijuana, since he owned and controlled the automobile in which it was seized. The motion for judgment of acquittal in his case was properly denied.

II
Appellants Robinette and Fenn contend that the prosecution failed to prove that the greenish-brown vegetable material seized in relation to them was the same as that tested and shown to be marijuana. They argue that the prosecution never established that the vegetable material in the sack thrown on the kitchen floor by Fenn, the material in the envelope in Fenn's pocket, and the material in the cigarettes and canister in Robinette's automobile was, in fact, marijuana and, thus, they argue that there were breaks in the chains of custody. We find no merit to this contention.
Joseph M. Saloom, a criminalist with the Alabama Department of Forensic Sciences, who examined the items seized, identified at trial each item of evidence by a number that he had placed on the item while it was in his possession. We have examined the state's exhibits relative to Fenn and Robinette. State's exhibits 1 and 2 apply to Fenn, and 12, 13, and 14 apply to Robinette. Each of these exhibits shows, in addition to the state's exhibit number, the corresponding number placed on the exhibit by Saloom. By simply comparing Saloom's numbers on the state's exhibits with his testimony in the record, his testimony can be easily related to the appropriate exhibit. Saloom referred to state's exhibit *688 1 as IV-26 and IV-27 and testified that they consist of a folded piece of paper containing 0.50 grams of marijuana and a plastic straw. He referred to state's exhibit 2 as II-8 and testified that it consists of three plastic bags collectively containing 51.42 grams of marijuana. He referred to state's exhibit 13 as II-15 which, he testified, is the partially burned, hand-rolled cigarettes containing 0.7 grams of marijuana. Finally, he referred to state's exhibit 12 as II-14 which, he testified, is a film canister containing 7.44 grams of marijuana.
Each link in the chains of custody of the different pieces of evidence was established, and, in addition, the testimony at trial showed that the items introduced into evidence were in substantially the same condition as they were when initially seized. Slaughter v. State, 411 So.2d 819 (Ala.Cr.App.1981).

III
Appellant Fenn contends that the trial court erred "in allowing evidence of the fruits of a search of defendant Fenn absent evidence of probable cause for an arrest or evidence that he was the subject of the search warrant." Here, we are concerned with the determination of whether the police who are executing a search warrant may search persons who are present at the place where the warrant is being executed, but who are not named in the warrant. Fenn was not named in the warrant, and it appears that the officers did not know that he was on the premises until they entered to execute the warrant.
It is a settled principle that a warrant to search designated premises will not authorize the search of every individual who happens to be on the premises. Travis v. State, 381 So.2d 97 (Ala.Cr.App.1979), cert. denied, 381 So.2d 102 (Ala.1980). The search of persons not named or described in the warrant, but found on premises or who come onto premises being searched, is not made lawful simply by their presence; the law requires that there be probable cause to believe that such persons are themselves participants in criminal activity. Ybarra v. Illinois, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979); United States v. Di Re, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948); Smith v. State, 292 Ala. 120, 289 So.2d 816 (1974). The Supreme Court, in Ybarra, observed that probable cause must be particularized with respect to each person on the premises, noting that "a person's mere proximity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person." 444 U.S. at 90,100 S.Ct. at 341. In summarizing the cases from which this principle evolved, we find in 2 W. LaFave, Search and Seizure, § 4.9(c) (2d ed. 1987), the following:
"The principle which emerged from [these cases] was that it is not constitutionally permissible `to search a person, not connected in any way with the place being searched, who merely happens to be upon the premises and who is not mentioned or described in the affidavit of probable cause upon which the warrant was issued.' Rather, `the law requires that there be probable cause to believe that such persons are themselves participating in criminal activity' or, somewhat more precisely, that there be probable cause that evidence which might be concealed or destroyed is to be found upon the person searched." (Footnotes omitted.)
A review of the instant facts pertaining to appellant Fenn leads us to the conclusion that the officers had probable cause to believe that he was participating in criminal activity and probable cause to believe that he had evidence on his person that might be concealed or destroyed. When Fenn was approached by an officer as he was trying to leave the premises, he was observed throwing a sack on the kitchen floor. The sack contained marijuana. Under these circumstances, the officers had probable cause to search Fenn and seize the contraband on his person and, also, to arrest Fenn and to conduct a search of him as an incident to the arrest. Accordingly, the marijuana seized from Fenn's person, as well as the marijuana discovered in the sack on the kitchen floor, was properly admitted into evidence.

*689 IV
Appellant Robinette contends that the trial court committed reversible error by admitting into evidence, over his objection, contraband seized from his automobile.
We conclude, after reviewing the facts relating to Robinette, that the officers had probable cause to believe that he, like Fenn, was participating in criminal activity and had evidence on his person which might be concealed or destroyed. When the officers entered the residence, Robinette locked himself in the bathroom. When the officers tried to enter the bathroom, he resisted and tried to prevent their entry. When they forced the door, he was observed hiding a loaded pistol. He was dressed in a robe and was in his "stocking feet." Under these circumstances, the officers had probable cause to search him. In addition, under the circumstances, the officers had probable cause to arrest him and to conduct a search of him incident to that arrest. Grounds to arrest a person who enters upon or is found in the place being searched may be found to exist on the basis of that person's appearance, flight, or efforts to conceal or dispose of evidence. See, e.g., United States v. Peep, 490 F.2d 903 (8th Cir.1974) (defendant, who entered during search, resisted pat-down undertaken by officers for self-protection during which roll of bills was discovered); State v. LeClair, 304 A.2d 385 (Me.1973) (defendant, who entered during search, was obviously under influence of drugs and his pockets were bulging); Brown v. State, 498 S.W.2d 343 (Tex.Cr.App. 1973), overruled on other grounds, Lippert v. State, 664 S.W.2d 712 (Tex.Cr.App.1984) (defendant, present when marijuana was found, hurried into bathroom, closed door, and flushed toilet); Fisher v. State, 493 S.W.2d 841 (Tex.Cr.App.1973), overruled on other grounds, Lippert v. State, 664 S.W.2d 712 (Tex.Cr.App.1984) (defendant, who arrived during search, fled when he learned what was occurring and, during flight, dropped a plastic bag).
Having determined that the search and arrest of Robinette were proper, we now turn to the question of the legality of the search of his automobile parked in the curtilage of the residence and the seizure of the contraband found in the automobile.
The search warrant in the instant case authorized a search of the premises at 3400 Cathy Lou Road. The term "premises" used in a search warrant encompasses the areas commonly referred to, in search and seizure cases, as the curtilage of a dwelling. United States v. Percival, 756 F.2d 600 (7th Cir.1985); United States v. Napoli, 530 F.2d 1198 (5th Cir.), cert. denied, 429 U.S. 920, 97 S.Ct. 316, 50 L.Ed.2d 287 (1976); Korreckt v. State. There were four vehicles parked in the curtilage of the house at 3400 Cathy Lou Road. One belonged to Robinette. They were all searched by the officers. There is no clear indication in the record that the officers knew the owners of the vehicles at the time the vehicles were searched; however, the testimony in this regard leads us to the conclusion that the officers did not ascertain who owned the vehicles until after the vehicles had been searched. The search warrant directing a search of the premises at 3400 Cathy Lou Road was sufficient to cover Robinette's automobile parked in the yard adjacent to the house and within the curtilage of the described property, for the warrant authorized a search of the "premises." United States v. Napoli, supra; Brooks v. United States, 416 F.2d 1044 (5th Cir.1969), cert. denied, 400 U.S. 840, 91 S.Ct. 81, 27 L.Ed.2d 75 (1970).
The fact that the vehicle did not belong to the owner of the premises cannot be regarded as significant in this case, because this information was not revealed to the officers until after the search. For the purposes of construing the scope of a "premises" search warrant, it is reasonable for the officers to regard an automobile, which is on the premises and discovered for the first time when the officers arrive, as a part of the premises subject to search. The allegation in support of the issuance of a warrant might well justify the magistrate reasonably to intend, and the policeman reasonably to understand the magistrate to mean, a description of "premises" to include anything at the described location *690 which is under the control or direction of the person whose effects are to be searched and which might serve as a hiding place for the contraband sought. In Beeler v. State, 677 P.2d 653 (Okla.1984), the court held that the search of a mere visitor at the residence being searched under a warrant was improper under Ybarra v. Illinois, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979), but held that the search of the visitor's truck parked on the lawn was proper, since the truck's ownership was unknown to the police at the time of the warrant's execution and the warrant encompassed the curtilage. In United States v. Cole, 628 F.2d 897 (5th Cir.1980), cert. denied, 450 U.S. 1043, 101 S.Ct. 1763, 68 L.Ed.2d 241 (1981), the court applied Ybarra to suppress evidence found on the person of a visitor, but upheld the search of the truck in which the visitor was seen to arrive.
Accordingly, we hold that the search of Robinette's automobile was authorized by the warrant, and its scope was limited only by the nature of the objects for which probable cause existed.
Assuming, arguendo, that the officers determined the ownership of the automobile before its search and that the search of Robinette's vehicle was beyond the scope of the search warrant, the search, nevertheless, withstands attack on our finding that the officers had probable cause to believe that the vehicle contained contraband. The on-the-scene warrantless search of the automobile in this instance was permissible under the traditional, well established contours of the "automobile exception" to the general warrant requirements. In Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), the Court ruled that where police officers, confronted with unforeseeable circumstances, have probale cause to believe an automobile contains articles subject to being seized, and where delay would enhance the possibility the articles would be destroyed or placed beyond the reach of the officers, an immediate warrantless search of the vehicle is justified. In Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), the Court held that exigent circumstances justifying a warrantless automobile search exist where the police unforeseeably discover facts furnishing probable cause for the search under circumstances in which the evidence may be destroyed or removed from the reach of the officers if a search or seizure is not carried out immediately. From the so-called "Carroll-Chambers Doctrine," the moveable vehicle exception to the warrant requirement has evolved through numerous cases and culminated in the recent decisions of the Court in United States v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), and California v. Carney, 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985). For a discussion of this evolvement, see 3 W. LaFave, supra, § 7.2. In 1 W. Ringel, Searches & Seizures, Arrests and Confessions, § 11.3 (2d ed. 1987), we find the following discussion of the so-called "Ross Rule":
"In Carroll v. U.S., 267 U.S. 132 [45 S.Ct. 280, 69 L.Ed.2d 543] (1925), the Supreme Court first set forth the principle that warrantless searches of automobiles are justified on the basis of probable cause to believe that the vehicle contains contraband. While in Carroll the search extended to the point that the seat upholstery was cut by the police officers in order to locate contraband liquor, the exact scope of a permissible search was left undefined by the Court. Further, it has been a continuing matter of controversy since Carroll whether the hypothetical mobility of a motor vehicle is sufficient to justify forgoing the warrant requirement, or whether the actual likelihood of mobility must be shown in the particular case in order to demonstrate exigent circumstances sufficient to justify the warrantless search.

"Both questions were answered by the Supreme Court in U.S. v. Ross, 456 U.S. 798 [102 S.Ct. 2157, 72 L.Ed.2d 572] (1982), in which the Court reaffirmed the Carroll doctrine and interpreted it in a manner to provide to police officers a `bright line' rule for conducting warrantless searches when probable cause exists to believe contraband is located in the vehicle. The Court held that when the police have probable cause to believe that *691 contraband is present in a vehicle they may conduct a warrantless search of the vehicle `as thorough as a magistrate could authorize in a warrant.' Thus, the scope of the search of the vehicle is limited only by the nature of the article for which probable cause exists. An example used by the Court: If probable cause exists to believe a vehicle contains undocumented aliens, a search of the vehicle could not legitimately extend to small suitcases, whether the search was conducted pursuant to a warrant or not. On the other hand, if probable cause exists to believe that drugs are present in the vehicle, as was the case in Ross, any portion of the vehicle, including closed containers and suitcases within the vehicle, are legitimate targets of the search. In short, `if probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search.'
"...
"After Ross, then, probable cause is sufficient in all instances to justify a warrantless search of a vehicle, including all parts of the vehicle where the suspected contraband could possibly be located, including closed containers. Further, given such probable cause, the search can be conducted even after the car has been taken into police custody. Officers may complete their search at the place of arrest, begin it there but interrupt it and finish searching at a police facility, or they may remove the vehicle to a police facility and conduct a search there.
"...
"In California v. Carney, 471 U.S. [386] [105 S.Ct. 2066, 85 L.Ed.2d 406] (1985), the Court seems to have answered two questions left open by the Ross decision. In Ross, throughout its decision (as in the earlier Carroll decision) the Court referred only to contraband as a legitimate target of a warrantless search. Left open was whether a warrantless search would be justified when probable cause exists to believe that mere evidence of a crime is present in the vehicle.
"In Carney, where the Court held the automobile exception applicable to a motor home, the defendant was suspected of exchanging marijuana for sex with young boys. In upholding the warrantless search of defendant's parked motor home, the Court stated: `The DEA agents had fresh, direct, uncontradicted evidence that [Carney] was distributing a controlled substance from the vehicle, apart from evidence of other possible offenses. The agents thus had abundant probable cause to enter and search the vehicle for evidence of a crime notwithstanding its possible use as a dwelling place.' From this language it would appear that the Court sanctions a warrantless search for mere evidence of a crime as well as for contraband.
"The second question left open by the Ross decision was the situation with regard to parked cars. Several post-Ross cases determined that Ross was broad enough to cover the warrantless search of parked and unoccupied vehicles, despite the absence of actual exigent circumstances. Nevertheless, the Court did not explicitly rule upon the contradictory signals previously given by it on this issue in Coolidge v. New Hampshire, 403 U.S. 443 [91 S.Ct. 2022, 29 L.Ed.2d 564] (1971), and Cardwell v. Lewis, 417 U.S. 583 [94 S.Ct. 2464, 41 L.Ed.2d 325] (1974).
"The decision in Carney has also apparently resolved this question. At the time of the search the motor home involved was parked in a parking lot, as it had been for several hours prior to the search. The Court emphasized that ready mobility is not the only justification for the automobile exception; the reduced expectation of privacy derived from pervasive governmental schemes of motor vehicle regulation is a second justification. The Court stated:
"When a vehicle is being used on the highways, or if it is readily capable of such use and is found stationary in a place not regularly used for residential purposestemporary or otherwise *692 the two justifications for the vehicle exception come into play. First, the vehicle is obviously readily mobile by the turn of a switch key, if not actually moving. Second, there is a reduced expectation of privacy stemming from its use as a licensed motor vehicle subject to a range of police regulation inapplicable to a fixed dwelling. At least in these circumstances, the overriding societal interests in effective law enforcement justify an immediate search before the vehicle and its occupants become unavailable.
"As pointed out in Justice Stevens' dissent, the Court's language seems to make it clear that inherent or ready mobility creates a conclusive presumption of exigency." (Footnotes omitted, emphasis added.)
There are many decisions of this court sustaining warrantless automobile searches based upon probable cause, so long as some exigent circumstance exists. See, e.g., Sterling v. State, 421 So.2d 1375 (Ala. Cr.App.1982); Richardson v. State, 376 So. 2d 205 (Ala.Cr.App.1978), aff'd, 376 So.2d 228 (Ala.1979); New v. State, 337 So.2d 1355 (Ala.Cr.App.1976); McCurdy v. State, 42 Ala.App. 646, 176 So.2d 53, cert. denied, 278 Ala. 710, 176 So.2d 57 (1965).
On numerous occasions, we have followed the holding of the Ross Court. See, e.g., Kinard v. State, 495 So.2d 705 (Ala. Cr.App.1986); Cooper v. State, 480 So.2d 8 (Ala.Cr.App.1985); Channell v. State, 477 So.2d 522 (Ala.Cr.App.1985); Traylor v. State, 439 So.2d 178 (Ala.Cr.App.1983). We have also cited Carney in Cotton v. State, 523 So.2d 467 (Ala.Cr.App.1986). Some of our decisions since Ross hold that probable cause to believe that a lawfully stopped automobile contains contraband justifies an immediate warrantless search of the automobile despite the absence of any additional exigent circumstances. For example, in our recent case of Cooper v. State, we followed United States v. Johns, 469 U.S. 478, 105 S.Ct. 881, 83 L.Ed.2d 890 (1985), wherein the Court held that there was no requirement that a warrantless search of a vehicle occur contemporaneously with its seizure. In relying upon Johns, we quoted the following language from Johns, 469 U.S. at 484, 105 S.Ct. at 885: "A vehicle lawfully in police custody may be searched on the basis of probable cause to believe that it contains contraband, and there is no requirement of exigent circumstances to justify such a warrantless search." 480 So.2d at 12.
The Supreme Court's increasing emphasis on, not merely the mobility factor, but also the lesser expectation of privacy factor, has been reflected in the manner in which lower courts have scrutinized vehicle searches. Many courts now uphold warrantless searches with virtually no inquiry into the facts of the particular search, reasoning that exigent circumstances are irrelevant. See, e.g., United States v. Bagley, 772 F.2d 482 (9th Cir.1985), cert. denied, 475 U.S. 1023, 106 S.Ct. 1215, 89 L.Ed.2d 326 (1986); United States v. Cisneros-Mireles, 739 F.2d 1000 (5th Cir.1984). Other courts, however, continue to emphasize the existence of exigent circumstances to bolster their approval of warrantless searches of automobiles. Our decisions seem to follow both courses.
Most of the cited cases deal with vehicles located on public highways and in parking lots. In the instant case, the vehicle in question was parked on private property; it was parked within the curtilage of the Hatcher residence. The courts have recognized that a car traveling on a public highway is afforded less privacy than the home, but that one's expectation of privacy in a vehicle is enhanced when the car is nestled in the driveway. Coolidge v. New Hampshire; [1]Cardwell v. Lewis, 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974); United States v. Shepherd, 714 F.2d 316 (4th Cir. 1983), cert. denied, 466 U.S. 938, 104 S.Ct. 1914, 80 L.Ed.2d 462 (1984). We find in 3 W. LaFave, supra, § 7.2(b) (2d ed. 1987), the following:

*693 "To the extent that the vehicle search cases continue to emphasize the existence of such [exigent] circumstances, they may have somewhat greater legitimacy. It is well to stress once again, however, that these cases generally utilize a very loose and uncritical type of exigent circumstances inquiry, quite different from that which would be employed if the warrantless search were of premises. In this sense, then, these decisions are unquestionably relying also upon the notion that vehicles carry with them a lesser expectation of privacy. (This means that genuine exigent circumstances must exist when the car can be searched only by first intruding inside private premises to gain access to the vehicle, for the lesser expectation of privacy does not also extend to premises housing a vehicle.") (Footnote omitted, emphasis added.)
Accordingly, out of abundance of caution, we have reviewed the circumstances of the instant search for the existence of exigent circumstances and conclude that the search of Robinette's vehicle, following his activities in the house leading to his arrest, was based on probable cause and exigent circumstances and, thus, did not violate the Fourth Amendment guarantees against unreasonable searches. Robinette's appearance and actions clearly connected him with the criminal activities which were taking place on the premises. Moreover, his actions indicated that he was something more than a casual visitor. The discovery of marijuana and related items in the residence indicated that a drug distribution and trafficking operation was being conducted. The evidence seized on the premises was material and relevant evidence against him. It was reasonable to suppose that Robinette was connected with this operation and that his vehicle parked in the yard would also contain similar contraband. Indeed, these facts would have justified the issuance of a search warrant authorizing a search of the automobile.
Here, the police did not stop Robinette's automobile in a public place, and the officers were apparently unaware, at the time they obtained the warrant, that one of the vehicles on the premises belonged to Robinette. Only after they had entered the premises to execute the warrant did they unexpectedly discover that one of the vehicles belonged to Robinette. They certainly cannot be faulted for failing to obtain a warrant to seize and search the vehicle before proceeding to the premises in question. Moreover, it is possible, under the circumstances that existed, that someone would have been in a position to move the automobile or destroy the evidence if the police did not conduct an immediate search or seizure. In fact, Mrs. Hatcher's husband, who was named in the warrant, was not on the premises during the search; thus, he could have moved the vehicle or its contents or could have had it done.
While it may well have been possible for the officers, after discovering the automobile on the premises, simply to seize the vehicle and postpone a search until after a warrant had been obtained, a prompt on-the-scene search of the automobile did not violate the Constitution. To require the officers to hold the vehicle until a warrant was obtained would have been a pointless exercise in the presence of clear probable cause. It should be pointed out that the officers were not trespassers, but were validly on the premises; that Robinette did not reside on the premises; and that his automobile, which was parked very near the public street, could have been quickly driven away. We find that the danger posed by the inherent mobility of Robinette's automobile, coupled with the fact that others possibly connected with the drug operation were at large, outweighed whatever enhanced privacy interest Robinette had by his vehicle being parked in the yard of the Hatcher residence. See United States v. Shepherd.
We conclude, therefore, that the police officers had probable cause to search Robinette's automobile under unforeseeable circumstances in which the securing of a warrant was impracticable. The realistic evaluation of the privacy interest involved and the practicalities of police investigation sustain the seizure of the contraband from Robinette's automobile. The search was, *694 consequently, reasonable, and the trial court did not err in denying Robinette's motion to suppress the evidence discovered in his automobile.

V
Last, appellants Fenn and Robinette contend that the trial court erred in denying their motions to suppress the evidence seized during the search of 3400 Cathy Lou Road on the ground that the affidavit supporting the warrant did not specify the time when the informant saw the drugs on the premises. It is true that the affidavit did not specify the time and date that the contraband was observed. However, the officer making the affidavit testified, at the suppression hearing, that he gave sworn oral testimony before the judge issuing the warrant to the effect that the informant told him that he had observed the marijuana on the premises the "night before." The judge who issued the search warrant testified that he did not remember the particular testimony, but that he never failed to place an officer, who was seeking a search warrant, under oath and question him concerning probable cause to issue the warrant. He further testified that he issued the warrant in question, but that he would never have done so unless the officer had testified as to the time the informant observed the marijuana.
The affidavit for the search warrant in this cause is, in pertinent part, as follows:
"1. Before me William McFatter a Judge of the District Court, Houston County, Alabama,
"2. personally appeared Lt. Mike Gilley, Houston County Sheriff's Department,
"3. who, being duly sworn, deposes and says that he has probable cause to believe and does believe that C.W. and Ivy K. Hatcher whose names are otherwise unknown has [sic] as in their possession marijuana, contrary to law at their residence located on 3400 Cathy Lou Road. Affiant states that a reliable informer told affiant that he was in the above residence and saw C.W. and Ivy K. Hatcher in possession of marijuana. Affiant further states that this informer is reliable and has given information in the recent past that has been proven to be true and correct. Affiant further states all information received from informant has been found to be reliable, true and correct."
Section 15-5-3, Code of Alabama 1975, provides,
"A search warrant can only be issued on probable cause, supported by an affidavit naming or describing the person and particularly describing the property and the place to be searched."
Section 15-5-4, provides the following:
"Before issuing a search warrant, a judge, or magistrate authorized by law to issue search warrants, must examine on oath the complainant and any witness he may produce, take their depositions in writing and cause them to be subscribed by the persons making them. Such depositions must set forth facts tending to establish the grounds of the application or probable cause for believing that they exist."
Assuming that an affidavit, on its face, is insufficient to support a finding of probable cause, the prosecution may adduce testimony showing that sufficient evidence was, in fact, before the issuing magistrate upon which a finding of probable cause could be based. Davis v. State, 500 So.2d 472 (Ala.Cr.App.1986). We have construed our search warrant statutes in such a manner as to permit the admission of oral testimony to cure an otherwise defective affidavit. See Morrison v. State, 500 So. 2d 36 (Ala.Cr.App.1985), aff'd, 500 So.2d 57 (Ala.1986), cert. denied, 481 U.S. 1007, 107 S.Ct. 1634, 95 L.Ed.2d 207 (1987); Funches v. State, 53 Ala.App. 330, 299 So.2d 771, cert. denied, 293 Ala. 752, 299 So.2d 778 (1974), cert. denied, 419 U.S. 1114, 95 S.Ct. 793, 42 L.Ed.2d 813 (1975); Carter v. State, 405 So.2d 957 (Ala.Cr.App.), cert. denied, 405 So.2d 962 (Ala.1981); Oliver v. State, 46 Ala.App. 118, 238 So.2d 916 (1970). The oral testimony, in order to be admissible, must have been disclosed to the issuing magistrate at the time of the issuance of the search warrant.
*695 In the instant case, it can be argued that the failure to state in the affidavit the time the informant observed the marijuana rendered the affidavit stale and, therefore, insufficient to support a finding of probable cause that contraband was on the premises. However, this omission was supplied by the sworn testimony of the officer and the issuing magistrate. After examining the affidavit and oral testimony before the issuing magistrate, we conclude that the requisites of probable cause required by Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), have been met with respect to this search warrant. The denial of the motion to suppress was proper, and the evidence seized pursuant to the warrant was properly admitted into evidence.
Even if the affidavit were defective and the warrant invalid in this case, the evidence seized was not due to be suppressed, because of the officer's good faith reliance on a warrant issued by a detached and neutral magistrate. United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed. 2d 677 (1984); McBride v. State, 492 So.2d 654 (Ala.Cr.App.1986). There is no question here that the officer acted in good faith, that the magistrate was impartial and neutral, and that the warrant with the affidavit attached was such that the officer could reasonably rely upon its sufficiency.
Having addressed the contentions of the parties on appeal, we hereby reverse the judgment of the lower court as it pertains to appellant Price and render a judgment in his favor, and affirm the judgments of conviction as they relate to appellants Robinette and Fenn.
REVERSED AND JUDGMENT RENDERED AS TO PRICE; AFFIRMED AS TO ROBINETTE AND FENN.
TYSON, TAYLOR, and McMILLAN, JJ., concur.
BOWEN, P.J., concurs with opinion.
BOWEN, Presiding Judge, concurring specially.
I disagree with the majority's finding in Issue IV that "the search of Robinette's automobile was authorized by the warrant." However, I do agree with the majority's conclusion that the search of Robinette's car was justified under the circumstances of this case.
The search warrant commanded an "immediate search on the person of C.W. Hatcher and Ivy K. Hatcher and in and upon the above described premises [their residence located at 3400 Cathy Lou Road]." In the affidavit, the only information attributed to the informant was that he had been in the residence and had seen the Hatchers "in possession of marijuana." There was no information that the Hatchers were engaged in the sale or distribution of marijuana.
The record reveals that the vehicles were searched only because they were on the premises described in the warrant. When the law enforcement officers arrived to execute the warrant, four vehicles were parked "inside the yard," "adjacent to the house." Before the search, the officers did not know who owned the vehicles or when they were driven to the house. After the residence and vehicles had been searched, the officers learned that one car belonged to the Hatchers, who owned the residence described in the warrant. Another car belonged to defendant Robinette and a pickup truck belonged to defendant Price. The fourth vehicle was identified as being in defendant Fenn's possession although not registered to him.
One ground of the motion to dismiss was that "[t]he seizure was illegal in that it was too broad and not in conformity with the direction of the issuing judge as far as the items to be seized and searched for."
At trial, the judge indicated that the search of the vehicles was proper because the vehicles were within the curtilage of the premises described in the warrant: "Unless you can show me something to the contrary, I have always understood that anyway."
The issue in this case is: Does a search warrant for a certain residence authorize a search of any vehicle found within the curtilage of those premises? The majority's answer is in the affirmative even where the *696 officers executing the search warrant do not know who owns or possesses the vehicles.
In reaching this conclusion, the majority relies on the majority opinions in United States v. Cole, 628 F.2d 897 (5th Cir.1980), cert. denied, 450 U.S. 1043, 101 S.Ct. 1763, 68 L.Ed.2d 241 (1981), and Beeler v. State, 677 P.2d 653 (Okl.Cr.App.1984). Those cases do hold that a warrant for premises does authorize a search of a vehicle found on those premises. However, the majority opinions in Cole and Beeler have been characterized as "remarkable" and "inconsistent." W. LaFave, 2 Search and Seizure, § 4.10(c), n. 44, p. 78, 1986 Pocket Part. The dissents in both Cole and Beeler relied, in part, on Ybarra v. Illinois, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979), which held that a search warrant authorizing the search for narcotics of the bartender and the premises of a small public tavern did not authorize the search of a patron present when the warrant was executed. Cole, 628 F.2d at 901 (Clark, J., dissenting) ("The use of the word `premises' alone does not, and should not, include visitors or their vehicles caught in the act of visiting."); Beeler, 577 P.2d at 659 (Brett, J., dissenting in part) ("I would extend the application of Ybarra and hold that an automobile's presence within the curtilage of a house described in a search warrant to search the house will not, without more, authorize a search of the automobile.").
The cases of United States v. Percival, 756 F.2d 600 (7th Cir.1985); United States v. Napoli, 530 F.2d 1198 (5th Cir.), cert. denied, 429 U.S. 920, 97 S.Ct. 316, 50 L.Ed. 2d 287 (1976); Brooks v. United States, 416 F.2d 1044 (5th Cir.1969), cert. denied, 400 U.S. 840, 91 S.Ct. 81, 27 L.Ed.2d 75 (1970); and Korreckt v. State, 507 So.2d 558 (Ala.Cr.App.1986), although cited by the majority, do not support their conclusions.
The exact holding in Percival was: "We therefore agree with other courts that have addressed this issue and hold that a search warrant authorizing a search of particularly described premises may permit the search of vehicles owned or controlled by the owner of, and found on, the premises." 756 F.2d at 612 (emphasis added).
In Napoli, the search of a camper bus parked in the driveway and almost touching the building was upheld as "embraced" within a search warrant for the premises. However, in that case the officers knew that a package containing LSD had been placed in the defendant's mailbox. They observed the defendant's girlfriend walk to the mailbox and then watched the defendant and the girl walk to the back of the house. As the officers approached, they observed the defendant "padlocking the door of a camper bus parked in the driveway." 530 F.2d at 1200. The camper was controlled by the owner and was found on the premises.
In Brooks, at the time the warrant was executed, the automobile was parked on the premises and was described in the affidavit for the search warrant as one used by the inhabitants of the cabin on numerous occasions, including the night when the crime occurred. 416 F.2d at 1050.
Korreckt was correctly decided and held that a truck, owned by a third party, was properly searched pursuant to a search warrant where the truck was under the defendant's control and was parked on the premises described in the search warrant. However, Korreckt was not concerned with the vehicle of a visitor and did not reach the issue presented here. In this case, there has been no showing that the Hatchers, whose premises were described in the search warrant, had any control over Robinette's car.
"It has often been held that a search warrant authorizing the search of certain premises covers automobiles found on those premises."

* * * * * *
"Although the language in many of the decisions suggests no such limitation, the conclusion that a description of premises covers vehicles parked thereon should at least be limited to vehicles under the control of the person whose premises are described. * * * [A] warrant for a certain house does not cover the automobile of a visitor there who has parked his car in the driveway. As with personal effects taken inside by the visitor, ... the probable cause determination made by the magistrate does not extend to the *697 vehicle the visitor has left outside." W. LaFave, 2 Search and Seizure § 4.10(c), at 158-59 (1st ed. 1978).
Robinette was not mentioned in the affidavit or search warrant. The majority correctly recognizes in Issue III that the search warrant did not authorize or justify a search of his person. Therefore, it is inconsistent to conclude that the same search warrant authorized a search of his car. To paraphrase the dissent in Cole, 628 F.2d at 900, the warrant no more authorized a search of Robinette's truck than it did of Robinette.
In Beeler, the truck searched did not belong to the owner of the residence described in the search warrant. Nevertheless, the court stated, without supporting authority or further explanation, "The fact that the vehicle did not belong to the owner of the premises cannot be regarded as significant since, it was not revealed to the officers until after the search." 677 P.2d at 657. In this case, the majority reaches the identical conclusion: "The fact that the vehicle did not belong to the owner of the premises cannot be regarded as significant in this case, because this information was not revealed to the officers until after the search."
Knowledge of the ownership of the vehicle searched is significant. If the officers gained probable cause to search Robinette after they entered the residence, a factor in determining the existence of probable cause to search his car was the knowledge that the car was his. "[I]f the officers know or should know that the automobile does not belong to the occupant of the premises, the search is not based upon probable cause or anything more than guilt by association and is therefore impermissible." Beeler, 677 P.2d at 659.
Remarkably, in the second part of Issue IV, the majority finds that the police had probable cause to search Robinette's car, independent of the search warrant "[a]ssuming, arguendo, that the officers determined the ownership of the automobile before its search." (Emphasis added.) The majority correctly concludes, "It was reasonable to suppose that Robinette was connected with this [drug] operation and that his vehicle parked in the yard would also contain similar contraband." (Emphasis added.) The key to the correctness of this statement are the words "his vehicle." In order for the police to have probable cause to search Robinette's vehicle, they had to know which vehicle was his.
While the officers' knowledge of the ownership or control of the vehicles was essential to searching the vehicles pursuant to the search warrant, and is a significant factor to consider in the probable cause determination apart from the search warrant, the lack of such knowledge is not fatal to a finding of probable cause to search the vehicles found on the premises.
The evidence supports the majority's conclusion that "[t]he discovery of marijuana and related items in the residence indicated that a drug distribution and trafficking operation was being conducted." This fact, coupled with the location and inherent mobility of the vehicles, satisfied that practical, common sense probable cause determination based upon the totality of the circumstances. Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Here, it was reasonable for the officers to search the vehicle, not pursuant to the search warrant, but based on probable cause and exigent circumstances arising from facts discovered after the officers entered the house.
NOTES
[1] In reviewing the facts before us, we find that they fall outside the scope of Coolidge for the reasons explained in United States v. Shepherd, 714 F.2d 316, 319 (4th Cir.1983), cert. denied, 466 U.S. 938, 104 S.Ct. 1914, 80 L.Ed.2d 462 (1984).